# UNITED STATES COURT OF APPEALS
# FOR THE DISTRICT OF COLUMBIA CIRCUIT

---

REH Co., LLC,

*Petitioner*,

v.

EPA,

*Respondent.*

---

On Petition for Review of Final Agency Action
of the Environmental Protection Agency

---

## MOTION OF GROWTH ENERGY TO
## INTERVENE IN SUPPORT OF RESPONDENT

On August 28, 2025, REH Co. LLC ("REH") petitioned this Court for

review of EPA's *August 2025 Decisions on Petitions for RFS Small Refinery

Exemptions*, EPA-420-R-25-010 ("2025 SRE Decisions"), through which EPA

presumably adjudicated one or more petitions filed by REH for a small-refinery

exemption ("SRE") from its obligations under the Renewable Fuel Standard

("RFS") for one or more years between 2016 and 2024. *See* Petition for Review,

ECF #2132515 (D.C. Cir. Aug. 28, 2025). REH's petition for review has already

been consolidated with one other petition for review of the same action, filed by

Alon Refining Krotz Springs, Inc ("Alon"). Order, ECF #2135540 (D.C. Cir. Sept.

1

18, 2025).  And additional petitions for review may yet be filed.  If successful, this consolidated lawsuit will impair Growth Energy's significant interests in the RFS standards and the renewable fuel its members produce to satisfy the RFS standards. Accordingly, Growth Energy respectfully moves to intervene in support of respondent, EPA.

Petitioners state that they oppose this motion.  EPA takes no position on this motion.[1]

## BACKGROUND

Congress created the RFS program under the Clean Air Act "to force the market" to "replace" fossil fuel with "greater and greater volumes of renewable fuel each year."  *Americans for Clean Energy v. EPA*, 864 F.3d 691, 696-697, 710 (D.C. Cir. 2017).  To accomplish this goal, the Act "requires [petroleum] refineries and other obligated parties to meet applicable volumes—mandatory and annually increasing quantities of renewable fuels that must be introduced into commerce in the United States each year."  *Sinclair Wyoming Refining Co. LLC v. EPA*, 114

---

[1] Growth Energy requests that its intervention be deemed to extend to all present and future consolidated cases.  *See* D.C. Cir. R. 15(b) ("A motion to intervene in a case before this court concerning direct review of an agency action will be deemed a motion to intervene in all cases before this court involving the same agency action or order, including later filed cases, unless the moving party specifically states otherwise, and an order granting such motion has the effect of granting intervention in all such cases.").

F.4th 693, 701 (D.C. Cir. 2024) (hereinafter "*Sinclair-Exemptions*") (quotation cleaned); *see* 42 U.S.C. §7545(*o*)(2)(A)(i).  In other words, "[b]y requiring upstream market participants ... to introduce increasing volumes of renewable fuel into the transportation fuel supply, Congress intended the Renewable Fuel Program to be a market forcing policy that would create demand pressure to increase consumption of renewable fuel." *Sinclair Wyoming Refining Co. LLC v. EPA*, 101 F.4th 871, 877 (D.C. Cir. 2024) (hereinafter "*Sinclair-Reset*") (quotation cleaned). Put another way, the national "demand for renewable fuel will be a function of the renewable fuel standards." *Americans for Clean Energy*, 864 F.3d at 710 (quotation cleaned).

Obligated parties show compliance by "retiring" the number of credits—called "RINs"—equal to their annual RFS obligation. *Sinclair-Exemptions*, 114 F.4th at 701.  Each RIN represents one gallon of renewable fuel.  40 C.F.R. §80.1415.  Obligated parties can obtain the necessary RINs by blending renewable fuel with petroleum or by buying RINs in a national market from others that have done so. *Sinclair-Exemptions*, 114 F.4th at 701-702.  Unused RINs may be "carried over" for compliance in the next year; the aggregate amount of these "carryover RINs" is called the "RIN bank." *Id.* at 702.

EPA may grant a "small refinery" (a refinery whose aggregate crude-oil throughput is below a specified level, §7545(*o*)(1)(K)) an "exemption" from its

RFS obligations for a given year "for the reason of disproportionate economic hardship," §7545(*o*)(9)(A)(ii)(II), (B)(i). Although small-refinery exemptions ("SREs") are granted to individual small refineries, they affect the national RFS obligations and the national demand for renewable fuel. An SRE "hinder[s] the achievement of the applicable renewable-fuel volumes." *Sinclair-Reset*, 101 F.4th at 881. In other words, SREs create a "renewable-fuel shortfall." *American Fuel & Petrochemical Manufacturers* v. *EPA*, 937 F.3d 559, 571, 588 (D.C. Cir. 2019).

In August 2025, EPA issued a decision adjudicating 175 SRE petitions for 2016-2024, 140 of which EPA fully or partially granted for 2018-2024, exempting a total of 5.34 billion RINs. *See* 2025 SRE Decisions. EPA "return[ed] the corresponding RINs retired by those small refineries for each compliance year." *Id.* at 20. For SREs granted for 2018-2022, EPA returned "expired" RINs, "meaning [they] cannot be used to meet future RFS compliance obligations," rather than "allow[ing] [those] small refineries to generate new, current-year vintage RINs to replace the old, expired RINs." *Id.* at 20-22.

Petitioners apparently were among the refineries whose SRE petitions were adjudicated in the 2025 SRE Decisions. EPA presumably either denied (fully or partially) REH's SRE petition (or petitions) or else granted the requested SRE but returned expired RINs (REH's petition for review does not say which) and EPA

denied Alon's petition for a 2024 SRE.  *See* 2025 SRE Decisions; Petition for Review of Alon Refining at 1, ECF #2135532 (D.C. Cir. Sept. 16, 2025).

## ARGUMENT

### I. GROWTH ENERGY MEETS THE STANDARDS FOR INTERVENTION

Federal Rule of Appellate Procedure 15(d) and Circuit Rule 15(b) establish procedural requirements for intervention on appeal.  This motion satisfies those procedural requirements. The motion is timely because it was filed by the deadline for procedural motions set by the Court's order.  ECF #2132518 (Sept. 29, 2025).  This motion is being served on all parties to the case.  And the discussion in this motion constitutes "a concise statement of [Growth Energy's] interest … and the grounds for intervention."  Federal Rule of Appellate Procedure 15(d).

For the substantive requirements, this Court has "held that intervention in the court of appeals is governed by the same standards as in the district court." *Massachusetts School of Law at Andover, Inc. v. United States*, 118 F.3d 776, 779 (D.C. Cir. 1997) (emphasis omitted).  Thus, a party has a right to intervene if it "claims an interest relating to the … transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest."  Federal Rule of Civil Procedure 24(a)(2); *see*

*also Deutsche Bank National Trust Co. v. FDIC*, 717 F.3d 189, 192 (D.C. Cir. 2013). Growth Energy satisfies this standard.[2]

**A.** **Courts Have Routinely Allowed Growth Energy and Similar Biofuels Organizations to Participate in Challenges to EPA Actions Adjudicating SRE Petitions and Other Actions Affecting RFS Standards**

Growth Energy have routinely participated in litigation involving RFS SRE decisions and, more broadly, RFS standards. This Court, the Fifth Circuit, and the Eleventh Circuit have allowed Growth Energy to intervene to defend prior EPA decisions granting one or more SRE petitions, including many of the same petitions adjudicated by the 2025 SRE Decisions challenged here. *See* Order, *Sinclair Wyoming Refining Co. v. EPA*, No. 22-1073, ECF #1987065 (D.C. Cir. Feb. 22, 2023); Order, *Hunt Refining Co. v. EPA*, No. 23-12347, ECF #27 (11th Cir. Oct. 6, 2023); Order, *San Antonio Refinery v. EPA*, No. 23-60399, ECF #51 (5th Cir. Sept. 12, 2023); Order, *Wynnewood Refining v. EPA*, No. 23-60427, ECF #27 (5th Cir. Aug. 30, 2023); Order, *Calumet Shreveport Refining v. EPA*, No. 22-60266, ECF No. 303 (5th Cir. Mar. 16, 2023). The Tenth Circuit held that biofuels associations similar to Growth Energy had standing to challenge EPA's decision to

---

[2] *A fortiori*, Growth Energy satisfies the standard for permissive intervention, which requires only a showing that the proposed intervenor has "a claim or defense that shares with the main action a common question of law or fact." Federal Rule of Civil Procedure 24(b)(1)(B).

grant three SREs. *Renewable Fuels Ass'n*, 948 F.3d 1206, 1230-1239 (10th Cir. 2020). Neither Growth Energy nor any similar representative of renewable-fuels producers has been denied participation in a case involving an SRE decision on substantive grounds.

Further, Growth Energy has successfully intervened in every lawsuit challenging EPA's annual RFS standards (which are, in effect, reduced by exemptions). *See* Order, *Center for Biological Diversity v. EPA*, No. 23-1177, ECF #2027447 (D.C. Cir. Nov. 16, 2023) (2023-25 standards); Order, *Sinclair Wyoming Refining Co. v. EPA*, No. 22-1210, ECF #1975422 (D.C. Cir. Nov. 29, 2022) (2020-22 standards); Order, *Clean Fuels Alliance America v. EPA*, No. 20-1107, ECF #1843937 (D.C. Cir. May 22, 2020) (2020 standards); Order, *Growth Energy v. EPA*, No. 19-1023, ECF #1784196 (D.C. Cir. Apr. 23, 2019) (2019 standards); Order, *American Fuel & Petrochemical Manufacturers v. EPA*, No. 17-1258, ECF # 1725309 (D.C. Cir. Apr. 5, 2018) (2018 standards); Order, *Alon Refining Krotz Springs, Inc. v. EPA*, No. 16- 1052, ECF #1722824 (D.C. Cir. Mar. 19, 2018) (2017 standards); Order, *Americans for Clean Energy v. EPA*, No. 16-1005, ECF #1611965 (D.C. Cir. May 5, 2016) (2014-16 standards); Order, *Monroe Energy, LLC v. EPA*, No. 13-1265, ECF #1468501 (D.C. Cir. Dec. 2, 2013) (2013 standards); Order, *American Petroleum Institute v. EPA*, No. 12-1139, ECF #1370535 (D.C. Cir. Apr. 24, 2012) (2012 standards); Order, *National*

*Petrochemical & Refiners v. EPA*, No. 10-1070, ECF #1242852 (D.C. Cir. May 3, 2010) (2009-10 standards).

There is no reason for the Court to depart from its and other courts' longstanding practice in RFS cases by excluding Growth Energy from this case.

## B. The Disposition of This Case Could Impair Growth Energy's Strong Interest in the SREs at Issue

Growth Energy has a strong interest in the SREs at issue, which could be impaired by the disposition of this case.

Although RFS "annual standards" nominally obligate petroleum refiners, they also "directly regulate biofuel producers" by defining the amount of renewable fuel that must be supplied and used in the nation's transportation fuel. *American Fuel*, 937 F.3d at 595. Therefore, renewable-fuel producers are also a direct object of RFS standards. *See Energy Future Coalition v. EPA*, 793 F.3d 141, 144 (D.C. Cir. 2015) (although "regulation [prohibiting use of certain biofuel in vehicles] is technically directed at vehicle manufacturers," biofuel producers were also "an object of the action" (quotation cleaned)). Further, petroleum products directly "compete with biofuel producers in the motor vehicle fuel market because ethanol is a substitute for the traditional petroleum-based components of gasoline." *American Fuel & Petrochemical Manufacturers v. EPA*, 3 F.4th 373, 379 (D.C. Cir. 2021); *see* Declaration of Emily Skor ("Skor Declaration") ¶5 (Sept. 29, 2025) [attached as Ex.]. RFS standards function as a barrier to competition

from petroleum producers for the content of the nation's transportation fuel, and accordingly lowering RFS standards "lift[s] that regulatory restriction[] on [ethanol producers'] competitors." *American Fuel*, 3 F.4th at 379; *see* Skor Declaration ¶6. Finally, because the "demand for renewable fuel will be a function of the renewable fuel standards," *Americans for Clean Energy*, 864 F.3d at 710 (cleaned up), "the basic laws of economics" establish that reducing RFS standards will "cause the demand" for renewable fuel, including corn ethanol, "to drop," *Growth Energy v. EPA*, 5 F.4th 1, 3 (D.C. Cir. 2021); *see also Monroe Energy, LLC v. EPA*, 750 F.3d 909, 917 (D.C. Cir. 2014); Skor Declaration ¶¶8-9.

Although SREs relieve individual refineries of their RFS obligations, SREs also reduce the national RFS standards: they "effectively reduce the volumes of renewable fuel required by the RFS program, potentially impacting renewable fuel use in the U.S." *Renewable Fuel Standard Program: Standards for 2020 and Biomass-Based Diesel Volume for 2021 and Other Changes*, 85 Fed. Reg. 7,016, 7,050:3 (Feb. 6, 2020); *see* EPA, Regulatory Impact Analysis 5-7, 46 (June 2022)[3]; *Sinclair Wyoming*, 101 F.4th at 881; Skor Declaration ¶¶8-9. Consequently, SREs "hinder the achievement of the applicable renewable-fuel volumes," *Sinclair-Reset*, 101 F.4th at 881, thereby causing a "renewable-fuel shortfall" relative to the

---

[3] https://nepis.epa.gov/Exe/ZyPDF.cgi?Dockey=P10155TQ.pdf.

national volume requirement, *American Fuel*, 937 F.3d at 571. Consequently, SREs are functionally a component of RFS standards: their direct objects include producers of renewable fuel and they define regulatory limits on competition with renewable-fuel producers for the content of the nation's transportation fuel.

If the Court were to vacate any partial or full denial of an SRE petition by the 2025 SRE Decisions, EPA could on remand grant the SRE (if previously denied) or grant the SRE more fully (if previously denied partially). In either case, therefore, the result would be to reduce the national volume requirements and thus suppress demand for renewable fuel. The same is also true if the Court were to vacate a decision to return expired RINs for an SRE granted by the 2025 SRE Decisions. On remand, EPA could allow the refinery to generate current-year RINs available for compliance future, which would in turn suppress the national volume requirements.

As EPA has explained, "[t]he availability of … RINs [freed up by SREs]— and the ability for obligated parties to use them to comply with their RFS obligations in lieu of RINs generated for renewable fuel produced and used in [a current or future year]—could reduce RIN demand and RIN prices in future years and may ultimately result in the market failing to produce the volume of renewable fuel anticipated by the volume requirements [that EPA would set for such year]. … While the exemptions granted for [a past] year[] have no impact on the volume of

renewable fuel actually produced and used in [that year] since those years are in the past, they directly increase the supply of RINs available for other obligated parties to use for compliance. As a result, obligated parties will be able to use the RFS program's carryover RIN provisions to roll these RINs forward to the [next] compliance year and beyond. … [T]he effect of these RINs is likely to … reduc[ed] the demand for renewable fuel production and use in [those future] years." *Renewable Fuel Standard (RFS) Program: Standards for 2026 and 2027, Partial Waiver of 2025 Cellulosic Biofuel Volume Requirement, and Other Changes; Supplemental Notice of Proposed Rulemaking*, 90 Fed. Reg. 45,007, 45,010:1-3 (Sept. 18, 2025); *see also* 2025 SRE Decisions at 21-22, 26 (SRE decisions making RINs available for compliance "result in decreased RIN prices, and in turn decreased future investments in renewable fuel production"); *Growth Energy*, 5 F.4th at 12 (SREs "granted after EPA has promulgated that year's standards … hinder achievement of the applicable volumes"); *Renewable Fuel Standard (RFS) Program: RFS Annual Rules*, 87 Fed. Reg. 39,600, 39,613:1-2, 39,617:2 (July 1, 2022) ("[C]ompliance with the RFS standards for one year is inherently intertwined with compliance for the prior year. … Any market effects of the 2020 and 2021 volumes finalized in this rule will be felt after the rule is promulgated and mediated through the carryover RIN bank.").

Any such action would harm Growth Energy's members because they are producers of the renewable fuel used to comply with the RFS requirements. Growth Energy is a national trade association dedicated to promoting the commercial production and use of ethanol. Skor Declaration ¶2. Growth Energy's 93 members are ethanol producers. *Id.* ¶¶7, 11. Ethanol comprises about 60% of all renewable fuel used to comply with the RFS annually and about 92% of the renewable fuel used to meet the RFS's "implied non-advanced" requirement annually. Skor Declaration ¶4. Growth Energy's members produce about 60% of the ethanol used to meet the RFS's requirements annually and about 55% of all the renewable fuel used to meet the RFS's "implied non-advanced" requirement annually. Skor Declaration ¶7. A favorable decision by this Court would affect Growth Energy's members as entities directly regulated by the SRE decisions at issue. It would also affect the members by lifting a regulatory barrier to competition between their ethanol products and petroleum fuel, and by suppressing demand for their ethanol products. Skor Declaration ¶¶6, 8-9.

### C. Growth Energy's Interest Will Not Be Adequately Represented by Another Party

This may be Growth Energy's only opportunity to refute petitioners' claims and protect EPA's decisions regarding their SRE petitions. And no other party will adequately represent Growth Energy's interests. "Th[at] requirement of [Rule 24] is satisfied if the [movant] shows that representation of [its] interest 'may be'

inadequate; and the burden of making that showing should be treated as minimal."
*Trbovich v. United Mine Workers*, 404 U.S. 528, 538 n.10 (1972); *see also Berger v. North Carolina State Conference of the NAACP*, 597 U.S. 179, 2203 (2022) (requirement "present[s] proposed intervenors with only a minimal challenge"). Thus, this requirement precludes intervention only if "it is clear that the party will provide adequate representation." *Crossroads Grassroots Policy Strategies v. FEC*, 788 F.3d 312, 321 (D.C. Cir. 2015) (cleaned up).

Although Growth Energy seeks to intervene in support of EPA, EPA's defenses necessarily will be focused on its own governmental and institutional interests and duties and therefore EPA cannot adequately represent the interests of the private commercial enterprises that comprise Growth Energy's membership and that Growth Energy represents. *See Crossroads Grassroots Policy Strategies v. FEC*, 788 F.3d 312, 321 (D.C. Cir. 2015) ("we look skeptically on government entities serving as adequate advocates for private parties"); *Fund for Animals, Inc. v. Norton*, 322 F.3d 728, 736-737 (D.C. Cir. 2003); *Natural Resources Defense Council v. Costle*, 561 F.2d 904, 912-913 (D.C. Cir. 1977). In fact, EPA's arguments in defense of the exemption denial could be in tension with Growth Energy's arguments in some respects, as has happened in RFS cases even when Growth Energy is defending EPA's action. *See Crossroads*, 788 F.3d at 321

(agency did not adequately represent private party even though there was "general alignment" between their positions).

## II. GROWTH ENERGY NEED NOT ESTABLISH ARTICLE III STANDING, BUT ANYWAY IT SATISFIES THIS COURT'S REQUIREMENTS

### A. Article III Standing Is Not Required for Defensive Intervention

This Court has said that a proposed intervenor supporting a respondent or defendant must also establish Article III standing. *See Deutsche Bank*, 717 F.3d at 193. Any such requirement is legally unsound and contrary to Supreme Court precedent because standing is necessary only for a party to invoke a court's jurisdiction, and a defensive intervenor, like the respondent or defendant it supports, does not invoke the court's jurisdiction. Indeed, the notion of a defensive party's "standing" is incoherent because such a party necessarily does not claim to have been injured by the action being defended and does not ask the court to grant it any relief regarding that action. It makes no more sense to ask whether a defensive intervenor has "standing" than to ask whether a defendant or respondent has standing. *See Virginia House of Delegates v. Bethune-Hill,* 587 U.S. 658, 663 (2019) (because defensive intervenor's "role [in district court did not] entail[] invoking a court's jurisdiction, it was not previously incumbent on [it] to demonstrate its standing"); *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 342 n.3 (2006); *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 410-411 (2013); *Town of Chester, N.Y. v. Laroe Estates, Inc.*, 581 U.S. 433, 439-440 (2017); *cf. Institutional Shareholder Services., Inc. v. SEC*, 142 F.4th 757, 764 n.3 (D.C. Cir. 2025) (noting but not addressing the doctrinal issue).

Moreover, even if defensive standing were required, a defensive intervenor would not need to show it because the respondent or defendant itself would undoubtedly have such standing. A party must show standing only if it "pursue[s] relief that is broader than or different from" that pursued by another party, but a defensive intervenor can only seek what the defendant or respondent seeks: the rejection of the plaintiff's or petitioner's claim (though, again, that is not "relief" in a jurisdictional sense at all). *Little Sisters of the Poor Saints Peter & Paul Home v. Pennsylvania*, 591 U.S. 657, 674 n.6 (2020); *see Maine Lobstermen's Ass'n v. National Marine Fisheries Service*, 70 F.4th 582, 593 (D.C. Cir. 2023) ("Because the Association has standing to sue …, we do not need to consider the standing of the intervenors."). That is certainly true here, insofar as Growth Energy as intervenor seeks affirmance of the challenged 2025 SRE Decisions just as EPA does.[4]

Accordingly, other circuits have correctly held that defensive intervenors need not establish standing. *See, e.g.*, *King v. Governor of New Jersey*, 767 F.3d

---

[4] A defensive intervenor might need to establish Article III standing to *appeal* a judgment if the defendant or respondent declines to appeal the same portion of the judgment below, but that standing can and should be assessed only at the time of the appeal relative to the *judgment*, which would be the relevant act causing injury. *See, e.g.*, *Virginia House*, 587 U.S. at 663 (defensive intervenor did not need to establish standing in district court but did need to as appellant); *Hollingsworth v. Perry*, 570 U.S. 693, 705 (2013).

216, 245-246 (3d Cir. 2014), *abrogated in part on other grounds by National*

*Institute of Family & Life Advocates v. Becerra*, 585 U.S. 755 (2018).[5]

### B.     Growth Energy Has Article III Standing

In any event, the Court's standing requirement as it has applied it to

defensive intervenors is satisfied here for the same reasons that the Center's

challenge threatens to impair Growth Energy's interests.  An association has

Article III standing to sue on behalf of its members when: "(a) its members would

otherwise have standing to sue in their own right; (b) the interests it seeks to

protect are germane to the organization's purpose; and (c) neither the claim

asserted nor the relief requested requires the participation of individual members in

the lawsuit." *Military Toxics Project v. EPA*, 146 F.3d 948, 953-954 (D.C. Cir.

1998).  And to have standing in its own right, an association member must show

"injury-in-fact, causation, and redressability." *Deutsche Bank*, 717 F.3d at 193.[6]

For the same reasons that Growth Energy has a substantial interest that could

be impaired by this litigation, its members will suffer a cognizable injury-in-fact if

---

[5] If the Court considers Article III standing dispositive of Growth Energy's motion, Growth Energy respectfully requests that the Court overturn *Deutsche Bank* and similar precedents through the *Irons* procedure.  *See Irons v. Diamond*, 670 F.2d 265, 267-68 & n.11 (D.C. Cir. 1981).

[6] It suffices for a single member of Growth Energy to have standing. *Sierra Club v. EPA*, 292 F.3d 895, 898 (D.C. Cir. 2002); *Military Toxics Project*, 146 F.3d at 954.

the exemption denials are set aside. *See Roeder v. Islamic Republic of Iran*, 333 F.3d 228, 233 (D.C. Cir. 2003) ("any person who satisfies Rule 24(a) will also meet Article III's standing requirement"). *See generally Crossroads*, 788 F.3d at 317 ("Our cases have generally found a sufficient injury in fact where a party benefits from agency action, the action is then challenged in court, and an unfavorable decision would remove the party's benefit."); *Fund for Animals*, 322 F.3d at 733-34 (D.C. Cir. 2003); *Military Toxics*, 146 F.3d at 954.

Indeed, as explained above, first, Growth Energy's members are a direct object of the SREs, and therefore there is "little question" that renewable-fuel producers "have standing." *Energy Future*, 793 F.3d at 144.

Second, its members have competitor standing because they are direct competitors of petroleum producers and SREs lift a regulatory barrier to their competition. *American Fuel*, 3 F.4th at 379 ("economic actors suffer constitutional injury in fact when agencies lift regulatory restrictions on their competitors or otherwise allow increased competition" and then "the rest of the standing inquiry ordinarily falls into place"); *see Air Excursions LLC v. Yellen*, 66 F.4th 272, 279-280 (D.C. Cir. 2023); *National Biodiesel Board v. EPA*, 843 F.3d 1010, 1015 (D.C. Cir. 2016) (renewable-fuel producers' standing was "self-evident" because EPA action "incentivize[d] importation of renewable fuels that will compete with domestic production, and an order vacating that [action] would eliminate the

resultant competitive harm"); *Delta Construction Co. v. EPA*, 783 F.3d 1291, 1299-1300 (D.C. Cir. 2015) (fuel company's standing was "self-evident" because challenged action "incentivizes other renewable fuels to the detriment of [its] interests"); *White Stallion Energy Center, LLC v. EPA*, 748 F.3d 1222, 1256 (D.C. Cir. 2014) (gas company's standing was "self-evident" because challenged action declined to require "fuel switching" from coal to gas), *rev'd on other grounds sub nom. Michigan v. EPA*, 576 U.S. 743 (2015).

And third, SREs will reduce the national demand for its members' products. [T]he constriction of [the members'] buyers' market" is "a direct economic injury" cognizable under Article III. *Craig v. Boren*, 429 U.S. 190, 194 (1976). That injury would be fairly traceable to a decision in this case that led to EPA granting or granting more fully an SRE, or allowing the exempt refinery to generate current-year RINs, and that injury would be redressed by affirming the challenged SRE decisions. *See, e.g.*, *Diamond Alternative Energy, LLC v. EPA*, 145 S. Ct. 2121, 2136 (2025) ("when the government regulates (or under-regulates) a business, the regulation (or lack thereof) may cause downstream or upstream economic injuries to others in the chain, such as certain manufacturers, retailers, suppliers, competitors, or customers. In cases of that kind, this Court's analysis of causation and redressability has recognized commonsense economic realities.").

Moreover, the interests that Growth Energy seeks to protect in this litigation are germane—indeed, integral—to its purpose of protecting and promoting the demand for renewable fuel, especially ethanol, and "mere pertinence between litigation subject and organizational purpose is sufficient." *National Lime Ass'n v. EPA*, 233 F.3d 625, 636 (D.C. Cir. 2000) (cleaned up). That is why Growth Energy intervened to defend prior SRE denials, as detailed above, and why it submitted a letter to EPA explaining its views on how EPA should adjudicate the SRE petitions at issue here.

Finally, the validity of the SRE Decisions can be adjudicated without the participation of any of Growth Energy's individual members.

## CONCLUSION

For the foregoing reasons, the Court should grant Growth Energy's motion to intervene.

Respectfully submitted,

/s/ David M. Lehn
DAVID M. LEHN
BOIES SCHILLER FLEXNER LLP
1401 NEW YORK Avenue NW
Washington, DC 20035
(202) 237-2727
dlehn@bsfllp.com

September 29, 2025

## CORPORATE DISCLOSURE STATEMENT

Growth Energy is a non-profit trade association within the meaning of Circuit Rule 26.1(b). Its members are ethanol producers and supporters of the ethanol industry. It operates to promote the general commercial, legislative, and other common interests of its members. It does not have a parent company, and no publicly held company has a 10% or greater ownership interest in it.

Respectfully submitted,

/s/ David M. Lehn
DAVID M. LEHN
BOIES SCHILLER FLEXNER LLP
1401 New York Avenue NW
Washington, DC 20035
(202) 237-2727

September 29, 2025

# CERTIFICATE OF PARTIES AND AMICI CURIAE

Pursuant to Circuit Rule 27(a)(4), Growth Energy certifies that the parties in these consolidated cases are:

*Petitioners*:  REH Co. LLC; Alon Refining Krotz Springs Inc.

*Respondent*:  U.S. Environmental Protection Agency.

*Movant-Intervenors*:  None.

*Amici curiae*:  None.

Respectfully submitted,

/s/ David M. Lehn
DAVID M. LEHN
BOIES SCHILLER FLEXNER LLP
1401 New York Avenue NW
Washington, DC  20035
(202) 237-2727

September 29, 2025

## CERTIFICATE OF COMPLIANCE

Pursuant to Federal Rule of Appellate Procedure 32(g)(1), the undersigned hereby certifies:

1.      This motion complies with the type-volume limitation of Federal Rule of Appellate Procedure 27(d)(2)(A) because it contains 4,232 words, excluding the exempted portions, as provided in Federal Rule of Appellate Procedure 32(f).  As permitted by Federal Rule of Appellate Procedure 32(g)(1), the undersigned has relied upon the word count feature of this word processing system in preparing this certificate.

2.      This motion complies with the typeface and type style requirements of Federal Rule of Appellate Procedure 27(a)(5)-(6) because it was prepared in proportionally spaced typeface using Microsoft Word for Office 365 in 14-point Times New Roman font.

/s/ David M. Lehn
DAVID M. LEHN

September 29, 2025

**CERTIFICATE OF SERVICE**

I certify that on September 29, 2025, I filed a copy of this brief using the

Court's case management electronic case filing system, which will automatically

serve notice of the filing on registered users of that system.


/s/ David M. Lehn

DAVID M. LEHN

September 29, 2025