No. 25-1180,
consolidated with Nos. 25-1187, 25-1195, 22-1196, and 25-1197

# In the United States Court of Appeals for the District of Columbia Circuit

───────────────

REH COMPANY, ET AL.,

*Petitioners*,

v.

U.S. ENVIRONMENTAL PROTECTION AGENCY,

*Respondent.*

───────────────

On Petition for Review of a Final Decision of the
Environmental Protection Agency, 90 Fed. Reg. 41,829 (Aug. 27, 2025)

───────────────

## JOINT RESPONSE IN OPPOSITION TO GROWTH ENERGY'S MOTION TO INTERVENE

───────────────

Allyson N. Ho
  *Counsel of Record*
Stephen J. Hammer
Robert W. Frey
GIBSON, DUNN & CRUTCHER LLP
2001 Ross Avenue, Suite 2100
Dallas, TX 75201
(214) 698-3100
aho@gibsondunn.com

*Counsel for Petitioners
in No. 25-1197*

Daniel J. Feith
  *Counsel of Record*
Peter C. Whitfield
Peter A. Bruland
Cody M. Akins
SIDLEY AUSTIN LLP
1501 K Street, NW
Washington, DC 20005
(202) 736-8000
dfeith@sidley.com

*Counsel for Petitioner
in No. 25-1187*

October 9, 2025

(additional counsel listed on inside cover)

Lavi M. Ben Dor
M. Christian Talley
GIBSON, DUNN & CRUTCHER LLP
1700 M Street, NW
Washington, DC 20036
(202) 955-8500

*Counsel for Petitioners*
*in No. 25-1197*

# TABLE OF CONTENTS

Glossary ................................................................................................. vi

Introduction........................................................................................... 1

Background ........................................................................................... 2

    A.    Legal background. ...................................................... 2

    B.    Factual and procedural background. ...................................... 4

Argument............................................................................................... 6

The Court should deny leave to intervene because Growth Energy has not shown that granting the petitions would injure its members..... 6

    A.    Intervenors must show that they would be injured by an unfavorable decision. ................................................................. 7

    B.    Growth Energy has not shown that granting the petitions would injure its members. ....................................................... 9

        1.    Growth Energy does not establish competitive injury or reduced demand. ................................................ 9

        2.    Growth Energy does not even try to show that its members would be injured if the Court granted Krotz Springs' and Parco's petitions. ........................... 15

        3.    Growth Energy's remaining arguments fail. ............... 17

    C.    The Court should decline Growth Energy's invitation to overturn its longstanding injury rule................................ 19

Conclusion ........................................................................................... 22

Certificate of Compliance

Certificate of Service

Addendum

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Abdelfattah v. DHS,*
    787 F.3d 524 (D.C. Cir. 2015) ................................................................. 18

*Bond v. United States,*
    564 U.S. 211 (2011) ................................................................................. 8

*Broidy Cap. Mgmt. LLC v. Muzin,*
    61 F.4th 984 (D.C. Cir. 2023) ................................................................. 9

*Bldg. & Const. Trades Dep't v. Reich,*
    40 F.3d 1275 (D.C. Cir. 1994) ................................................................. 8

*Cal. Steel Indus., Inc. v. United States,*
    48 F.4th 1336 (Fed. Cir. 2022) ............................................................... 8

*City of Cleveland v. NRC,*
    17 F.3d 1515 (D.C. Cir. 1994) ................................................................. 7

*Defs. of Wildlife v. Perciasepe,*
    714 F.3d 1317 (D.C. Cir. 2013) ............................................................... 8

*Dellums v. NRC,*
    863 F.2d 968 (D.C. Cir. 1988) ................................................................. 19

*Deutsche Bank Nat'l Tr. Co. v. FDIC,*
    717 F.3d 189 (D.C. Cir. 2013) ................................................................. 9

*EEOC v. Nat'l Childs. Ctr., Inc.,*
    146 F.3d 1042 (D.C. Cir. 1998) ............................................................... 7

*Energy Future Coal. v. EPA,*
    793 F.3d 141 (2015) ................................................................................. 17

*Golan v. Saada,*
    596 U.S. 666 (2022) ................................................................................. 7

*HollyFrontier Cheyenne Refin., LLC v. Renewable Fuels Ass'n,*
   594 U.S. 382 (2021) .............................................................. 3

*Hutchins v. District of Columbia,*
   188 F.3d 531 (D.C. Cir. 1999) ............................................ 18

*IGas Holdings, Inc. v. EPA,*
   146 F.4th 1126 (D.C. Cir. 2025) ........................................ 19

*Mil. Toxics Project v. EPA,*
   146 F.3d 948 (D.C. Cir. 1998) .............................................. 9

*Mohawk Indus., Inc. v. Carpenter,*
   558 U.S. 100 (2009) ............................................................ 20

*Mowrer v. Dep't of Transp.,*
   14 F.4th 723 (D.C. Cir. 2021) ............................................ 21

*Nat'l Ass'n for Surface Finishing v. EPA,*
   795 F.3d 1 (D.C. Cir. 2015) ................................................ 20

*Old Dominion Elec. Coop. v. FERC,*
   892 F.3d 1223 (D.C. Cir. 2018) ..................................... 7, 19

*Prods. of Renewables United for Integrity Truth &*
*Transparency v. EPA,*
   2022 WL 538185 (10th Cir. Feb. 23, 2022) .............. 12,13, 18

*Renewable Fuel Ass'n v. EPA,*
   948 F.3d 1206 (10th Cir. 2020) .......................................... 12

*S. Christian Leadership Conf. v. Kelley,*
   747 F.2d 777 (D.C. Cir. 1984) .............................................. 8

*In re Sealed Case No. 97-3112,*
   181 F.3d 128 (D.C. Cir. 1999) ............................................ 21

*Sinclair Wyo. Refin. Co. v. EPA,*
   114 F.4th 693 (D.C. Cir. 2024) ..............1, 10, 11, 12, 13, 14, 17, 18

*Sinclair Wyo. Refin. Co. v. EPA,*
   101 F.4th 871 (D.C. Cir. 2024) .......................................... 15

*Steel Co. v. Citizens for a Better Env't,*
  523 U.S. 83 (1998) .................................................................... 18

*Summers v. Earth Island Inst.,*
  555 U.S. 488 (2009) .................................................................. 12

*Town of Chester v. Laroe Estates, Inc.,*
  581 U.S. 433 (2017) .................................................................. 19

*UPS, Inc. v. Mitchell,*
  451 U.S. 56 (1981) ...................................................................... 7

*Winters v. Taskila,*
  88 F.4th 665 (6th Cir. 2023) .................................................... 21

*WMATA v. Dir., Off. of Workers' Comp. Programs,*
  824 F.2d 94 (D.C. Cir. 1987) ..................................................... 7

**Statutes**

42 U.S.C. §7545(o)(1)(K) ............................................................ 4

42 U.S.C. § 7545(o)(2)(A) ........................................................... 2

42 U.S.C. § 7545(o)(2)(B)(i) ....................................................... 2

42 U.S.C. § 7545(o)(5)(A)(i) ....................................................... 2

42 U.S.C. § 7545(o)(9)(B)(i) ....................................................... 3

**Regulations**

40 C.F.R. §§ 80.1425–.1429 ........................................................ 2

40 C.F.R. § 80.1426(a) ................................................................. 2

40 C.F.R. § 80.1427(a) ................................................................. 3

40 C.F.R. § 80.1428(c) ................................................................. 3

40 C.F.R. § 80.1429(b) ................................................................. 2

88 Fed. Reg. 44,468 (July 12, 2023) ........................................... 2

**Rules**

Fed. R. App. P. 15(d) ........................................................ 8

Fed. R. Civ. P. 24(a) ........................................................ 8

D.C. Cir. R. 34(d)–(e) ........................................................ 7

**Scholarly Authority**

Douglas H. Ginsburg & Donald Falk, *The Court En Banc:
    1981–1990*, 59 Geo. Wash. L. Rev. 1008 (1991) ................................. 20

**Other Authorities**

EPA, *Economics of Blending 10 Percent Corn Ethanol into
    Gasoline* (Nov. 2022) ............................................................. 13

Testimony of Andrew Wheeler, Hearing before the House
    Committee on Science, Space, and Technology (Sep. 19, 2019) ......... 14

U.S. Courts, *Report of the Appellate Rules Advisory
    Committee* (Oct. 15, 2025) ....................................................... 20

## GLOSSARY

EPA                     Environmental Protection Agency

RINs                    Renewable Identification Numbers

## INTRODUCTION

Growth Energy wants to join this case as a party, without the burden of showing that it faces any injury from the relief petitioners seek. But Federal Rule of Appellate Procedure 15(d) requires more. Under this Court's longstanding precedent, only those who face the invasion of a legally protected interest—an injury in fact—are entitled to intervene and become parties. That bedrock rule, reaffirmed by this Court countless times over the last forty years, is dispositive here.

Far from offering evidence of injury, Growth Energy chiefly relies on arguments this Court has already found inadequate. Just last year in *Sinclair Wyoming v. EPA*, 114 F.4th 693 (D.C. Cir. 2024), the Court held that Growth Energy could not prove injury simply by pointing to its members' market shares or making threadbare claims of competitive harm. Undeterred, Growth Energy tries again. Relying on a recycled declaration from its CEO, it asks this Court to accept the same market-share and competition claims. Those arguments were not enough in *Sinclair Wyoming*, and they are not enough now. The Court should deny leave to intervene.

## BACKGROUND

### A.    Legal background

The Renewable Fuel Standard requires obligated parties (*i.e.*, oil refineries and fuel importers) to blend certain percentages of renewable fuels into the transportation fuels they produce or import. *See* 42 U.S.C. § 7545(o)(2)(A). EPA sets those percentages on an annual, calendar-year basis. *See, e.g.*, Renewable Fuel Standard (RFS) Program: Standards for 2023-2025 and Other Changes, 88 Fed. Reg. 44,468 (July 12, 2023); *see also* 42 U.S.C. § 7545(o)(2)(B)(i) (setting annual volumes of renewable fuel through 2022).

EPA implements the Renewable Fuel Standard through a system of renewable fuel credits, called "Renewable Identification Numbers" or "RINs." *See* 42 U.S.C. § 7545(o)(5)(A)(i). Producers or importers of renewable fuel generate RINs for each qualifying gallon of renewable fuel they introduce as transportation fuel into the United States. 40 C.F.R. § 80.1426(a). When an entity blends the renewable fuel with traditional fuels (like gasoline) or uses that fuel as transportation fuel, that person "separates" the RIN from its associated batch of renewable fuel. *Id.* § 80.1429(b). Once separated, RINs may be sold or used by an obligated party to demonstrate compliance. *See id.* §§ 80.1425–.1429.

2

An obligated party demonstrates compliance with the Renewable Fuel Standard by "retir[ing]" enough RINs to satisfy its obligations under the Standard. *Id.* § 80.1427(a)(1). "Any given refinery may therefore comply with the law thanks to its own blending efforts, the purchase of credits from someone else, or a combination of both." *HollyFrontier Cheyenne Refin., LLC v. Renewable Fuels Ass'n*, 594 U.S. 382, 386 (2021). RINs have an expiration date, however. A RIN may be used to demonstrate compliance only for the calendar year in which it was generated or the following calendar year. 40 C.F.R. § 80.1427(a)(6). A RIN generated in 2024, for example, may be used to satisfy 2024 or 2025 obligations, but it is "invalid" and thus worthless for 2026 and beyond. *Id.* § 80.1428(c).

In establishing the Renewable Fuel Standard, "Congress was concerned" that compliance obligations "could work special burdens on small refineries." *HollyFrontier*, 594 U.S. at 386. To relieve those burdens, Congress authorized small refineries to petition EPA for an exemption from their obligations "for the reason of disproportionate economic hardship." 42 U.S.C. § 7545(o)(9)(B)(i). The small-refinery exemption is available to any "refinery for which the average aggregate daily crude oil throughput for a calendar year (as determined by dividing the aggregate throughput

3

for the calendar year by the number of days in the calendar year) does not exceed 75,000 barrels." *Id.* § 7545(o)(1)(K).

### B.    Factual and procedural background

1.    In August 2025, EPA decided 175 small-refinery-exemption applications. Since then, six refineries have sought review in this Court. *See REH Co. v. EPA*, No. 25-1180; *Alon Refin. Krotz Springs, Inc. v. EPA*, No. 25-1187; *Calumet Shreveport Refin., LLC v. EPA*, No. 25-1195; *Calumet Montana Refin., LLC v. EPA*, No. 25-1196; *HF Sinclair Refin. & Mktg. LLC v. EPA*, No. 25-1197.

Although many of the petitions are likely to raise issues common to many refineries, Petitioners Alon Refining Krotz Springs, Inc. ("Krotz Springs") and HF Sinclair Parco Refining LLC ("Parco") seek review of a determination uniquely affecting their two refineries. Specifically, EPA denied each refinery's application for a *2024* exemption on the grounds that, even though they met the definition of "small refinery" in 2024, they did not meet it in *2023* and therefore, under EPA regulations, were ineligible. EPA 2025 Order 6. *But see* 42 U.S.C. §7545(o)(1)(K) (defining a

"small refinery" as one whose "average aggregate daily crude oil through-put for *a* calendar year … does not exceed 75,000 barrels" (emphasis added)).

Because litigating that issue on the usual schedule would deny Krotz Springs and Parco effective relief, on September 18, 2025, Krotz Springs moved to sever its case from the consolidated cases and expedite briefing and consideration. On October 7, 2025, Parco moved to sever its case from the consolidated cases, consolidate it with Krotz Springs' petition, and expedite its consideration. As both Petitioners explain, EPA's eligibility determination raises a discrete legal question affecting just their two refineries, and time is of the essence due to the expiration of 2024 RINs on March 31, 2026. Both motions remain pending. Together, Krotz Springs' and Parco's cases implicate just two of the 175 exemption petitions resolved in EPA's August 2025 decisions.

On September 29, Growth Energy—a trade association whose members produce ethanol—moved to intervene in support of EPA. Although Growth Energy filed its motion 11 days after Krotz Springs moved to sever and expedite its petition, Growth Energy does not specifically address Krotz Springs' case, nor does it explain how granting Krotz

5

Springs' petition in particular would injure its members. Instead, it principally (1) asserts that exempting small refineries increases competition and reduces demand for ethanol and (2) argues that courts have "routinely" accepted its prior arguments.

## ARGUMENT

**The Court should deny leave to intervene because Growth Energy has not shown that granting the petitions for review would injure its members.**

Growth Energy's motion runs aground on Rule 15(d) and decades of circuit precedent. For more than 40 years, this Court has understood the rule's "interest" requirement to call for injury in fact. Unless a would-be intervenor faces harm from an unfavorable decision, it may not demand the privileges of party status. Under that rule, Growth Energy's motion fails, repackaging the very arguments this Court rejected last year in *Sinclair Wyoming*. And Growth Energy does not even try to explain why it is entitled to intervene in Nos. 25-1187 and 25-1197 if the Court severs and consolidates those cases. Accordingly, the Court should deny Growth Energy's motion in full or, at a minimum, as to the petitions in Nos. 25-1187 and 25-1197.

A.    **Intervenors must show that they would be injured by an unfavorable decision.**

Because "[i]ntervenors become full-blown parties to litigation," *Old Dominion Elec. Coop. v. FERC*, 892 F.3d 1223, 1232 (D.C. Cir. 2018), they enjoy privileges that amici do not. Parties (but not amici) may access filings that are "shielded from public view." *EEOC v. Nat'l Childs. Ctr., Inc.*, 146 F.3d 1042, 1046 (D.C. Cir. 1998). Parties (but not amici) may file dispositive motions. *E.g.*, *WMATA v. Dir., Off. of Workers' Comp. Programs*, 824 F.2d 94, 95 (D.C. Cir. 1987). Parties (but not amici) may present oral argument without leave of court. *See* D.C. Cir. R. 34(d)–(e). Parties (but not amici) may insist that the Court address their arguments. *Compare Golan v. Saada*, 596 U.S. 666, 679 (2022) (courts are "responsible for addressing and responding to" arguments "raised by the parties"), *with UPS, Inc. v. Mitchell*, 451 U.S. 56, 60 n.2 (1981) ("declin[ing] to consider" argument raised by amicus but "not … the parties"). And parties (but not amici) may "petition for rehearing and petition the Supreme Court for writs of *certiorari*." *City of Cleveland v. NRC*, 17 F.3d 1515, 1517 (D.C. Cir. 1994).

But party status is not open to all comers. Instead, "a person who wants to intervene" in appellate review of agency action must have an

7

"interest" in the case. Fed. R. App. P. 15(d); *accord* Fed. R. Civ. P. 24(a).

For more than four decades, this Court has understood that language to

require not just "*any* interest the applicant can put forward." *S. Christian

Leadership Conf. v. Kelley*, 747 F.2d 777, 779 (D.C. Cir. 1984). Instead,

the interest must be a "legally protectable one." *Id.* Before a would-be

intervenor can "participat[e] on equal footing with the original parties to

a suit," *Bldg. & Const. Trades Dep't v. Reich*, 40 F.3d 1275, 1282 (D.C.

Cir. 1994), it must show that it faces "an invasion of a legally protected

interest which is (a) concrete and particularized, and (b) actual or immi-

nent, not conjectural or hypothetical," *Defs. of Wildlife v. Perciasepe*, 714

F.3d 1317, 1323 (D.C. Cir. 2013).

This rule does not give would-be intervenors a free pass to party

status whenever they cast their lot with the defendant or respondent.

*Contra* Mot. 15. To be sure, a party that is sued need not show injury "to

object to relief being sought at its expense." *Bond v. United States*, 564

U.S. 211, 217 (2011). But "[a] defendant-intervenor does not fit the same

mold as the traditional unwilling defendant." *Cal. Steel Indus., Inc. v.

United States*, 48 F.4th 1336, 1343 (Fed. Cir. 2022). Instead, it "actively

seeks to participate in the resolution of a case in which the plaintiff did

8

not bring a claim against or request any relief from the proposed interve-nor." *Id.* Under these circumstances, Rule 15's "interest" requirement means that an intervenor must face injury from "the relief the petitioners seek." *Mil. Toxics Project v. EPA*, 146 F.3d 948, 954 (D.C. Cir. 1998).

These safeguards make sense. Without them, anyone "with only a philosophic identification with a defendant—or a concern with a possible unfavorable precedent—could attempt to intervene and influence the course of litigation." *Deutsche Bank Nat'l Tr. Co. v. FDIC*, 717 F.3d 189, 195 (D.C. Cir. 2013) (Silberman, J., concurring); *cf. Broidy Cap. Mgmt. LLC v. Muzin*, 61 F.4th 984, 994 (D.C. Cir. 2023) (discussing the "chaos [that] would ensue if courts were required to address the arguments of every nonparty" with views about "ongoing litigation").

## B. Growth Energy has not shown that granting the petitions would injure its members.

### 1. Growth Energy does not establish competitive injury or reduced demand.

Citing a cursory declaration by its CEO, Growth Energy insists that granting the petitions could harm its members by increasing competition and reducing demand for their fuel. Mot. 19. But the "evidence" Growth Energy offers here is just a recycled version of the evidence this Court found lacking in *Sinclair Wyoming*. And, making matters worse, Growth

Energy fails to account for EPA's reallocation policy or its findings about the real-world effects of small-refinery exemptions—both of which undermine Growth Energy's theory of injury. Finally, Growth Energy does not even try to show that its members could be harmed if the Court were to grant Krotz Springs' and Parco's petitions, which those petitioners have moved to sever from the other consolidated cases. If the Court grants those motions, it should deny Growth Energy's motion to intervene in Case Nos. 25-1187 and 25-1197.

a.    Just last year, this Court told Growth Energy that a "sparse and conclusory" declaration is "insufficient" to establish injury. *Sinclair Wyo.*, 114 F.4th at 722. Yet the declaration Growth Energy submitted here is substantively identical to the ones this Court rejected in *Sinclair Wyoming*. The new declaration should meet the same fate.

In *Sinclair Wyoming*, Growth Energy tried to show injury by submitting a pair of declarations from its CEO. *See id.* The declarations offered two theories of harm. First, the CEO maintained that the challenged actions would "increase the competition that … Growth Energy's members face from fossil-fuel producers." Supp. Decl. at Add.2, *Sinclair Wyo. Refin. Co. v. EPA*, No. 22-1074 (D.C. Cir. Aug. 28, 2023), Doc.

2014358 (citation modified). Second, the CEO stated that the actions would "reduce the future domestic demand for renewable fuel … that Growth Energy's members produce." *Id.* That was so (she stated) because (1) the challenged actions would reduce renewable-fuel demand by "about 1.63 billion … gallons," (2) "roughly three-quarters" of renewable fuel was ethanol, and (3) Growth Energy's members produce "about 57%" of the nation's ethanol." *Id.*; Standing Decl. 3, *Sinclair Wyo. Refin. Co. v. EPA*, No. 22-1074 (D.C. Cir. Aug. 28, 2023), Doc. 2014355. The CEO concluded that the actions would "injure each Growth Energy member in the same way and roughly proportional to their market share." Supp. Decl. at Add.2, *Sinclair Wyo.*, Doc. 2014358.

This Court deemed those declarations too "sparse and conclusory" to show injury. 114 F.4th at 722. As to "competitive injuries," Growth Energy's claims were "insufficient." *Id.* And as to reduced demand, "market share alone" did not show that the challenged actions would "cause [Growth Energy's members] a present or future economic injury." *Id.* The challenged actions offered relief to "only 31 small refineries"—a small fraction of the industry. *Id.* at 723. Nor were the "dynamics of the RIN

market … so clear" that the Court could "assume without further information or analysis" that granting that relief would "reduce [future] demand for Growth Energy's members' renewable fuels." *Id.* at 722–23; *see Summers v. Earth Island Inst.*, 555 U.S. 488, 499 (2009) (explaining that standing "is not an ingenious academic exercise in the conceivable but requires a factual showing of perceptible harm" (citation modified)).

To show what Growth Energy *could* have offered, the Court drew a "contrast" with the economic modeling put forward by a "similar biofuels coalition" in another recent case. *Sinclair Wyo.*, 114 F.4th at 723 n.15. Like Growth Energy, the petitioners in *Renewable Fuel Association v. EPA* began by estimating the "total renewable fuel obligations" for the three small refineries at issue. 948 F.3d 1206, 1232 (10th Cir. 2020). But they didn't stop there. Instead, the petitioners' expert went on to analyze how the challenged actions would impact the "blend rate" and cause "revenue reductions … for [the petitioners'] members." *Id.* Then, he projected what "ethanol prices would have been" without the actions, along with the "annualized impact on … members' revenues." *Id.* at 1233. In short, the petitioners "detailed … how the challenged [actions] caused their injuries," *Prods. of Renewables United for Integrity Truth & Transparency*

*v. EPA*, 2022 WL 538185, at *10 (10th Cir. 2022), by "model[ing] … actual demand for renewable fuels," *Sinclair Wyo.*, 114 F.4th at 723 n.15.

> **b.**    Growth Energy's motion fails to take *Sinclair Wyoming* to heart. Following the same unsuccessful playbook, Growth Energy offers two principal theories of injury here, grounded on a declaration from its CEO that recycles many of her previous claims almost verbatim. First, Growth Energy's CEO insists that an unfavorable decision would "increas[e] the competition that … [Growth Energy's members] will face from petroleum." Decl. 2–3, Doc. 2137689. Second, she claims that granting the petitions could "reduc[e] the national demand for the ethanol produced by Growth Energy's members" because (1) "about 60%" of renewable fuel is ethanol and (2) Growth Energy's members produce "about 60%" of the nation's ethanol." *Id.* at 2–3. The CEO concludes that "any such harm will be undifferentiated among Growth Energy's members and likely be incurred in proportion to their respective market shares." *Id.* at 3.

The Court should reject those arguments, just as it did in *Sinclair Wyoming*. As the Court explained last year, "sparse and conclusory claims about competiti[on]" are "insufficient to establish" harm. *Sinclair*

*Wyo.*, 114 F.4th at 722. Nor can "market share alone" show that the challenged actions "will cause these ethanol producers (or any others) a present or future economic injury." *Id.* Neither the RFS program nor the market for renewable fuels is that simple. For example, one recent EPA study found that "gasoline produced by [exempt] small refineries … still was blended with ethanol at 10 volume percent." EPA, *Economics of Blending 10 Percent Corn Ethanol into Gasoline* 3 (Nov. 2022), bit.ly/EPA_Study. And in 2019, the EPA Administrator testified to Congress that "[e]thanol demand has not been impacted by the small refinery program. … [W]e do not see any demand disruption from the small refinery program on ethanol production." Testimony of Andrew Wheeler, Hearing before the House Committee on Science, Space, and Technology (Sep. 19, 2019). Growth Energy addresses none of this.

And while Growth Energy again insists that "some future reduction in demand … is possible," nothing in its declaration or brief "suggests that a reduction in overall market demand" is "certainly impending." *Sinclair Wyo.*, 114 F.4th at 722 (citation omitted). Indeed, Growth Energy fails to acknowledge, let alone account for, EPA's policy of reallocating exempt refineries' obligations to other, nonexempt refineries. It cites the

regulation that adopted that policy—but it mentions only the shortfall, not EPA's solution. *See* Mot. 9 (citing 85 Fed. Reg. 7,016, 7,050 (Feb. 6, 2020)). And it quotes a case explaining that small refinery exemptions can "hinde[r] the achievement of the applicable renewable-fuel volumes," Mot. 4 (quoting *Sinclair Wyo. Refin. Co. v. EPA*, 101 F.4th 871, 881 (D.C. Cir. 2024)), while omitting key details from the very same paragraph: "'To avoid such a shortfall,' EPA has long adjusted the percentage stand-ards applicable to other petroleum refiners and importers to account for small refinery exemptions." *Sinclair Wyo.*, 101 F.4th at 881. Even with a roadmap from this Court, *see id.* at 723 n.15 (citing *Renewable Fuels Ass'n*, 948 F.3d at 1232–33), Growth Energy still marshals no evidence.

> **2. Growth Energy does not even try to show that its members would be injured if the Court granted Krotz Springs' and Parco's petitions.**

At a minimum, the Court should deny leave to intervene in Case Nos. 25-1187 and 25-1197 if it severs those cases from the other consoli-dated cases. Krotz Springs' and Parco's motions to sever and expedite are pending, and petitioners respectfully submit that the Court should decide those motions before deciding Growth Energy's motion to intervene. If the Court severs Krotz Springs' and Parco's petitions, it should evaluate

the merits of Growth Energy's motion to intervene in Case Nos. 25-1187 and 25-1197 without reference to the other consolidated cases.

Though Krotz Springs' motion was pending when Growth Energy moved to intervene, Growth Energy offers no arguments or evidence specific to No. 25-1187. Small wonder: the exemption that Krotz Springs ultimately is seeking involves just one percent of the 5.34-billion-RINs exempted by the EPA decisions. *See* EPA 2025 Order 1 (totaling exemptions). How exactly would exempting Krotz Springs affect Growth Energy's members? Growth Energy does not say. It offers no concrete basis to find that the tiny percentage of exempted RINs at issue in Krotz Springs' petition will have any impact on the overall renewable fuel market, let alone on the subset of that market supplied by Growth Energy's members. The addition of Parco's petition—which also concerns EPA's resolution of a single exemption request by a single refinery for a single compliance year, out of 175 exemption requests from 38 refineries resolved in the EPA decisions—does not alter this conclusion. Whether or not Growth Energy is permitted to intervene in "this consolidated lawsuit," Mot. 2, it has forfeited the chance to seek intervention if the Court severs Nos. 25-1187 and 25-1197.

16

### 3. Growth Energy's remaining arguments fail.

Citing *Energy Future Coalition v. EPA*, Growth Energy briefly declares itself a "direct object" of the renewable-fuel-standard program. Mot. 8. But that does not answer the injury question. The petitioners in *Energy Future Coalition* claimed that an EPA regulation "prohibit[ed] the use" of their biofuel—a classic "injury in fact." *Energy Future Coal. v. EPA*, 793 F.3d 141, 144 (D.C. Cir. 2015). The only question was whether the petitioners were too far downstream of the regulation, which was "technically directed at vehicle manufacturers." *Id.* (The Court said no: both automakers and biofuel producers were "object[s] of the action." *Id.*) Here, by contrast, nobody has outlawed ethanol or created a "regulatory impediment" to its sale, *id.*, and Growth Energy has offered no evidence of any other injury.

Growth Energy also demands party status because it and "similar representative[s] of renewable-fuels producers" have participated in other renewable-fuel-standard cases. Mot. 7. But "past performance is no guarantee of future results," as this Court told Growth Energy when it rejected the very same argument in *Sinclair Wyoming*. 114 F.4th at 723. Besides, most of the intervention orders that Growth Energy cites (at 6–

17

8) were decided without adversarial briefing, and none analyzes the injury question disputed here. *Cf. Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 91 (1998) ("[D]rive-by jurisdictional rulings … have no precedential effect."). And while Growth Energy claims that no renewable-fuels producer has ever been "denied participation" in a small-refinery-exemption case "on substantive grounds," Mot. 7, that is hardly the whole picture. *See Sinclair Wyo.*, 114 F.4th at 701 (Growth Energy "failed to demonstrate that it has standing."); *Prods. of Renewables*, 2022 WL 538185, at *10 (no standing where renewable-fuels producers "provide[d] no more than a broad, macro analysis of the RIN market").

Finally, Growth Energy drops a cursory footnote arguing that it "satisfies the standard for permissive intervention" under Federal Rule of Civil Procedure 24(b). Mot. 6 n.2. The Court should deem that argument "forfeited." *Abdelfattah v. DHS*, 787 F.3d 524, 532 (D.C. Cir. 2015); *Hutchins v. District of Columbia*, 188 F.3d 531, 539 n.3 (D.C. Cir. 1999) (en banc) ("We need not consider cursory arguments made only in a footnote …."). In all events, a permissive intervenor must have "the kin[d] of clai[m] or defens[e] that can be raised in courts of law as part of an actual or impending law suit." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591

623 n.18 (1997); *see also* Caleb Nelson, *Intervention*, 106 Va. L. Rev. 271, 386 (2020) ("Rule 24(b) is a mechanism for consolidating in a single action claims or defenses that might otherwise be litigated separately."). But Growth Energy does not bother explaining what "claim" or "defense" it would bring in a standalone lawsuit, and it is not the Court's job to go "hunting" for one. *Jones v. Kirchner*, 835 F.3d 74, 83 (D.C. Cir. 2016) ("We apply forfeiture to unarticulated legal … theories." (citation modified)).

## C.    The Court should decline Growth Energy's invitation to overturn its longstanding injury rule.

Hemmed in by circuit precedent, Growth Energy makes one last effort to break free. It begins (at 15) by suggesting that requiring intervenors to show injury is "contrary to Supreme Court precedent." But the Court has already recognized that *Town of Chester v. Laroe Estates, Inc.*, 581 U.S. 433 (2017), "does not cast doubt upon, let alone eviscerate, [circuit] precedent." *Old Dominion*, 892 F.3d at 1232 n.2 (D.C. Cir. 2018) (citing *Dellums v. NRC*, 863 F.2d 968, 978 n.11 (D.C. Cir. 1988)). And none of the other cases Growth Energy cites analyzed the standards for intervention or considered whether the "interest" requirement demands injury in fact. So it is unsurprising that the Court has continued to apply its longstanding precedent, even after those decisions issued. *See, e.g.*,

*IGas Holdings, Inc. v. EPA*, 146 F.4th 1126, 1135 n.2 (D.C. Cir. 2025) (citing *Little Sisters of the Poor* and adhering to circuit precedent).

Changing tack, Growth Energy asks the Court to overrule its precedent "through the *Irons* procedure." Mot. 17 n.5 (citing *Irons v. Diamond*, 670 F.2d 265, 267–68 & n.11 (D.C. Cir. 1981). Here too, Growth Energy forfeits the argument by raising it only in a cursory footnote. *See Abdelfattah*, 787 F.3d at 532; *Hutchins*, 188 F.3d at 539 n.3. If the Court does consider Growth Energy's request, however, it should decline. Even apart from the injury rule's soundness, this case is an especially poor candidate for *Irons*.

To begin with, Growth Energy cites no case—and we have found none—where the Court used *Irons* to topple a precedent as deeply rooted as the injury rule. *Irons* is a "nonadversarial … procedure," Douglas H. Ginsburg & Donald Falk, *The Court En Banc: 1981–1990*, 59 Geo. Wash. L. Rev. 1008, 1040 (1991), that is typically used for "minor or marginal issue[s]." *Nat'l Ass'n for Surface Finishing v. EPA*, 795 F.3d 1, 8 n.4 (D.C. Cir. 2015). But the injury rule is neither. It has been the law for more than forty years, and nearly every member of the current Court has writ-

ten or joined opinions applying it. *See* Addendum. Nor does Growth Energy "describe how [it] would replace the many precedents [it] would disregar[d]." *Mowrer v. Dep't of Transp.*, 14 F.4th 723, 749 (D.C. Cir. 2021) (Randolph, J., concurring in part and concurring in the judgment) (citation modified). The Court should not reconsider a rule that well established (or leave so large a vacuum) without the "benefit of briefing or argument." *In re Sealed Case No. 97-3112,* 181 F.3d 128, 146 n.5 (D.C. Cir. 1999) (Henderson, J., concurring).

Nor is this the time to revisit the Court's intervention standards. The Advisory Committee on Appellate Rules—the "body whose charge it is to review issues of precisely this sort," *Winters v. Taskila*, 88 F.4th 665, 672 (6th Cir. 2023)—is developing a "new Federal Rule of Appellate Procedure governing intervention." U.S. Courts, *Report of the Appellate Rules Advisory Committee* 227 (Oct. 15, 2025), bit.ly/Rules_Committee. While it does, judicial economy and deference to the rulemaking process counsel against en banc review. *See generally Mohawk Indus., Inc. v. Carpenter*, 558 U.S. 100, 113 (2009) ("[R]ulemaking," not "court decision," is "the preferred means" for resolving difficult procedural questions.).

# CONCLUSION

The Court should deny Growth Energy's motion to intervene.


Dated: October 9, 2025

Respectfully submitted,

*/s/ Allyson N. Ho*
Allyson N. Ho
  *Counsel of Record*
Stephen J. Hammer
Robert W. Frey
GIBSON, DUNN & CRUTCHER LLP
2001 Ross Avenue, Suite 2100
Dallas, TX 75201
(214) 698-3100
aho@gibsondunn.com

Lavi M. Ben Dor
M. Christian Talley
GIBSON, DUNN & CRUTCHER LLP
1700 M Street, NW
Washington, DC 20036
(202) 955-8500

*Counsel for Petitioners
in No. 25-1197*

*/s/ Daniel J. Feith*
Daniel J. Feith
  *Counsel of Record*
Peter C. Whitfield
Peter A. Bruland
Cody M. Akins
SIDLEY AUSTIN LLP
1501 K Street, NW
Washington, DC 20005
(202) 736-8000
dfeith@sidley.com

*Counsel for Petitioner
in No. 25-1187*

22

## CERTIFICATE OF COMPLIANCE

This response complies with Federal Rule of Appellate Procedure 27(d)(1)(E) because it has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point Century Schoolbook font. The response complies with Federal Rule of Appellate Procedure 27(d)(2) because it contains 4,277 words, including the Addendum, but excluding the sections listed in Rule 32(f).

*/s/ Daniel J. Feith*

## CERTIFICATE OF SERVICE

I certify that on October 9, 2025, I electronically filed this document with the Clerk of the Court using the CM/ECF System, which will send notice to all registered CM/ECF users.

*/s/ Daniel J. Feith*

## ADDENDUM

Contra Growth Energy (at 17 n.5), "overturn[ing]" this Court's injury requirement "through the *Irons* procedure" would be particularly inappropriate when nearly every sitting Member of this Court has written or joined opinions applying that rule:

- *IGas Holdings, Inc. v. EPA*, 146 F.4th 1126, 1135 n.2 (D.C. Cir. 2025) (Pan, J., joined by Pillard and Garcia, JJ.).

- *Am. Whitewater v. FERC*, 125 F.4th 1139, 1151 (D.C. Cir. 2025) (Henderson, J., joined by Pan and Edwards, JJ.).

- *Yocha Dehe v. U.S. Dep't of the Interior*, 3 F.4th 427, 431 (D.C. Cir. 2021) (Rogers, J., joined by Henderson and Sentelle, JJ.).

- *Old Dominion Electric Cooperative v. FERC*, 892 F.3d 1223, 1233 (D.C. Cir. 2018) (Millett, J., joined by Tatel and Griffith, JJ.).

- *NRDC v. EPA*, 896 F.3d 459, 462–63 (D.C. Cir. 2018) (Griffith, J., joined by Katsas and Edwards, JJ.).

- *U.S. House of Representatives v. Price*, 2017 WL 3271445, at *1 (D.C. Cir. Aug. 1, 2017) (per curiam by Millett, Pillard, and Wilkins, JJ.).

- *Env't Integrity Project v. Pruitt*, 709 F. App'x 12, 13 (D.C. Cir. 2017) (per curiam by Kavanaugh, Srinivasan, and Pillard, JJ.).

- *Crossroads Grassroots Pol'y Strategies v. FEC*, 788 F.3d 312, 316 (D.C. Cir. 2015) (Brown, J., joined by Rogers and Ginsburg, JJ.).