No. 25-1180 & consolidated cases

# In the United States Court of Appeals for the District of Columbia Circuit

---

REH COMPANY, LLC ET AL.,

*Petitioners*,

v.

ENVIRONMENTAL PROTECTION AGENCY,

*Respondent*.

---

On Petition for Review of a Final Decision of the
Environmental Protection Agency, 90 Fed. Reg. 41,829 (Aug. 27, 2025)

---

## JOINT RESPONSE IN OPPOSITION TO THE RENEWABLE FUELS ASSOCIATION'S MOTION TO INTERVENE

---

Daniel J. Feith
  *Counsel of Record*
Peter C. Whitfield
Peter A. Bruland
Cody M. Akins
SIDLEY AUSTIN LLP
1501 K Street, NW
Washington, D.C.  20005
(202) 736-8000
dfeith@sidley.com

*Counsel for Petitioner
in No. 25-1187*

Allyson N. Ho
  *Counsel of Record*
Stephen J. Hammer
Robert W. Frey
GIBSON, DUNN & CRUTCHER LLP
2001 Ross Avenue, Suite 2100
Dallas, Texas  75201
(214) 698-3100
aho@gibsondunn.com

Lavi M. Ben Dor
M. Christian Talley
GIBSON, DUNN & CRUTCHER LLP
1700 M Street, NW
Washington, D.C.  20036
(202) 955-8500

*Counsel for Petitioners
in No. 25-1197*

**INTRODUCTION**

The Renewable Fuels Association seeks to intervene in this case—and "all" other appeals in this Court challenging EPA's recent resolution of 175 small-refinery-exemption petitions, Mot. 2 n.2—without meeting the basic prerequisites for intervention.  Would-be intervenors must demonstrate their "interest" in the case, Fed. R. App. P. 15(d), which refers "not to *any* interest the applicant can put forward, but only to a legally protectable one" equivalent to the injury required for Article III standing.  *S. Christian Leadership Conf., (SCLC) v. Kelley*, 747 F.2d 777, 779 (D.C. Cir. 1984).  The Association falls far short of that requirement.

Just last year, this Court rejected the purported injury of another interest group that proffered similarly "sparse and conclusory claims about competitive injuries" that would supposedly ensue from small-refinery exemptions.  *Sinclair Wyo. Refin. Co. v. EPA*, 114 F.4th 693, 722 (D.C. Cir. 2024).  The Court made clear that what matters is how granting relief to the *specific refineries* at issue would inflict injury.  *Id.* at 723.  The Association's declarations ignore those requirements.  They vaguely assert that unspecified members enjoy a "substantial share" of the re-

newables market and that relief to refineries writ large could reduce demand.  That's insufficient for intervention—particularly in Case Nos. 25-1187 and 25-1197, which implicate just *two* refineries' petitions for exemptions as to a single compliance year (if those cases are severed in light of the unique issues involved).

Unable to satisfy this Court's intervention requirements, the Association deems them in conflict with Supreme Court precedent.  Mot. 11–13.  But this Court has already rejected that argument based on the same precedent the Association now invokes.  Because the Association can't satisfy this Court's intervention requirements—and because its request to depart from them is baseless—its intervention motion should be denied.

## BACKGROUND

## I.    Legal Background

This case concerns the Renewable Fuel Standard, which "requires most domestic [oil] refineries to blend a certain amount of ethanol and other renewable fuels into the transportation fuels they produce."  *HollyFrontier Cheyenne Refin., LLC v. Renewable Fuels Ass'n*, 594 U.S. 382,

385 (2021); *see* 42 U.S.C. § 7545(o)(2)(A).  Congress set the annual required volumes of renewable fuels up through 2022, 42 U.S.C. § 7545(o)(2)(B)(i), and tasked EPA with setting the volumes for subsequent years, *id.* § 7545(o)(2)(B)(ii); *see*, *e.g.*, 90 Fed. Reg. 25,784 (June 17, 2025) (proposing volumes and percentage standards for 2026 and 2027); 88 Fed. Reg. 44,468 (July 12, 2023) (setting levels for 2023 through 2025).

To implement those requirements, EPA set up "a market-based program" through which parties can purchase and trade renewable fuel credits, called "Renewable Identification Numbers" or "RINs." *Wynnewood Refin. Co. v. EPA*, 77 F.4th 767, 774 (D.C. Cir. 2023); *see* 42 U.S.C. § 7545(o)(5).  RINs are generated when renewable fuel is produced or imported.  40 C.F.R. § 80.1426(a).  "When the renewable fuel is blended with conventional transportation fuel (*e.g.*, gasoline or diesel), the RINs are 'separated' from their assigned batch" of renewable fuel and become usable.  *Sinclair Wyo. Refin. Co.*, 114 F.4th at 701 (citation omitted); *see* 40 C.F.R. §§ 80.1426(e), 80.1429(b).

A refinery must "retire" enough RINs (*i.e.*, submit them to EPA) to meet its obligations under the program.  40 C.F.R. § 80.1427(a)(1).  It can obtain the necessary RINs by either blending renewable fuels itself or

purchasing RINs from others. *Wynnewood Refin. Co.*, 77 F.4th at 774. In this way, RINs "serve as the currency of the [Renewable Fuel Standard] Program," because refineries often rely on purchased RINs to help satisfy their obligations. *Id.*

A RIN lasts for a limited duration. It remains "valid to show compliance" only for "12 months" after it is generated. 42 U.S.C. § 7545(o)(5)(C). EPA regulations permit using a RIN to establish compliance for the calendar year in which it was generated or the following calendar year; for subsequent years, the RIN becomes "invalid." 40 C.F.R. §§ 80.1427(a)(6), 80.1428(c).

"[C]oncerned" that the Renewable Fuel Standard's "escalating . . . obligations could work special burdens on small refineries," Congress established a scheme to exempt those refineries from those obligations. *HollyFrontier*, 594 U.S. at 386–87. A refinery can petition EPA "at any time" for an exemption from the Renewable Fuel Standard "for the reason of disproportionate economic hardship." 42 U.S.C. § 7545(o)(9)(B)(i). A "small refinery" eligible for this exemption is one "for which the average aggregate daily crude oil throughput for a calendar year . . . does not exceed 75,000 barrels." *Id.* § 7545(o)(1)(K).

4

## II.    Factual and Procedural Background

In August 2025, EPA decided 175 small-refinery-exemption peti-
tions. *See Notice of August 2025 Decisions on Petitions for Small Refinery
Exemptions Under the Renewable Fuel Standard Program*, 90 Fed. Reg.
41,829 (Aug. 27, 2025). Since then, 24 petitions for review have been filed
in this Court challenging EPA's decisions. *See REH Co. v. EPA*, No. 25-
1180 (listing consolidated cases).

Although many of the petitions are likely to raise issues common to
many refineries, Petitioners Alon Refining Krotz Springs, Inc. (in Case
No. 25-1187) and HF Sinclair Refining & Marketing LLC and HF Sinclair
Parco Refining LLC (collectively, "Parco") (in Case No. 25-1197) seek re-
view of a determination uniquely affecting their two refineries.[1]

EPA denied each refinery's petition for a *2024* exemption on the
ground that, even though they met the definition of "small refinery" in
2024, they didn't meet it in *2023* and so were purportedly ineligible under

---

[1] Parco has also filed a petition for review of EPA's resolution of its pe-
tition for an exemption as to the 2022 compliance year. *See* Doc.
#2140852, *HF Sinclair Refin. & Mktg. LLC v. EPA*, No. 25-1208 (D.C.
Cir. Oct. 17, 2025).

EPA regulations.  *But see* 42 U.S.C. § 7545(o)(1)(K) (defining a "small refinery" as one whose "average aggregate daily crude oil throughput for *a* calendar year . . . does not exceed 75,000 barrels") (emphasis added).

Because litigating that issue on the usual schedule would deny Krotz Springs and Parco effective relief, Krotz Springs moved on September 18, 2025 to sever Case No. 25-1187 from the consolidated cases and expedite briefing and consideration.  Doc. #2135663.  On October 7, 2025, Parco likewise moved to sever Case No. 25-1197 from the consolidated cases, consolidate it with Krotz Springs' petition, and expedite its consideration.  Doc. #2139286.

As both petitioners explain, EPA's eligibility determination raises a discrete legal question affecting just their two refineries, and time is of the essence because—barring an effective date for the 2026 renewable fuel standards after March 31, 2026—2024 RINs will expire as of that date.  *See* 40 C.F.R. §§ 80.1428(c), 80.1451(f)(1)(i)(A).  Both motions remain pending.  Together, Krotz Springs' and Parco's petitions in Case Nos. 25-1187 and 25-1197 implicate just 2 of the 175 exemption petitions resolved in EPA's August 2025 decisions.

On October 15, the Renewable Fuels Association—"a national trade association representing U.S. ethanol producers"—moved to intervene in support of EPA.  Mot. 6.  Despite briefly noting Krotz Springs' and Parco's motions to sever, Mot. 4, the Association doesn't specifically address either case and doesn't explain how granting either petition in particular would injure its members.  Instead, the Association principally asserts that (1) exempting small refineries generally reduces demand for ethanol, and (2) courts have "consistently" permitted it to intervene in prior cases.  Mot. 9.

**ARGUMENT**

## I. The Court should deny leave to intervene because the Association hasn't demonstrated that granting the petitions for review would injure its members.

The Association's motion to intervene can't be squared with Rule 15(d) or this Court's precedents, which make clear that intervenors must demonstrate injury in fact through specific, concrete evidence.  The Association purports to have established associational standing, but neither of its declarations identifies any specific member that would suffer injury.  Instead, the Association relies on assertions substantively identical to the same ones this Court already held legally insufficient in *Sinclair*

7

*Wyoming*, 114 F.4th at 722, when rejecting the purported injury of the interest group in that case. And the Association doesn't even try to explain why it could intervene in Case Nos. 25-1187 and 25-1197 if the Court severs and consolidates those cases—defying *Sinclair Wyoming*'s refinery-specific analysis. The Court should deny the Association's motion in full or, at a minimum, as to the petitions in Case Nos. 25-1187 and 25-1197.

## A. Intervenors must show that they would be injured by an unfavorable decision.

Federal Rule of Appellate Procedure 15(d) provides that an entity seeking to intervene as a party must establish its "interest" in the litigation. Fed. R. App. 15(d). For decades, this Court has made clear that this is not "*any* interest the applicant can put forward, but only . . . a legally protectable one." *S. Christian Leadership Conf., (SCLC)*, 747 F.2d at 779; *accord Mova Pharm. Corp. v. Shalala*, 140 F.3d 1060, 1074 (D.C. Cir. 1998) ("[A] party that seeks to intervene as of right must demonstrate that it has standing to participate in the action.").

The Association doesn't dispute that precedent. And it acknowledges that "[t]he Court has required intervenors supporting a respondent" to show injury. Mot. 11 (citing *Deutsche Bank Nat'l Tr. Co. v. FDIC*,

717 F.3d 189, 193 (D.C. Cir. 2013)).  Instead, it argues that it has satisfied these precedents or, alternatively, that they should be discarded as inconsistent with intervening Supreme Court decisions.  Both arguments are meritless.

## B. The Association hasn't shown that granting the petitions would injure its members.

The Association's intervention motion should be denied across the board because it hasn't established injury in fact.  Despite asserting that it satisfies associational-standing principles, the Association never identifies any particular members that will suffer injury.  And the vague declarations it submits are textbook examples of how *not* to establish injury under *Sinclair Wyoming*.  Nor do those declarations even attempt to show why injury would ensue from granting the petitions in Case Nos. 25-1187 and 25-1197.  So intervention should be denied in those cases at a minimum if they're severed.

The Association asserts that it has established the injury necessary for intervention through associational-standing principles.  *See* Mot. 13.  Yet it never identifies *which* of its members in particular will suffer injury—instead broadly referencing "RFA's members" throughout.  *See*,

9

*e.g.*, Mot. 2, 4, 6, 8, 14.  The Association's two declarations don't identify any specific members that will suffer injury, either.

Given those omissions, the Association's claim to associational standing fails under this Court's precedents.  As the Association recognizes, it must establish that at least "one member" has "standing in its own right."  Mot. 13 (citations omitted).  And "[w]hen a petitioner claims associational standing, it is not enough to aver that unidentified members have been injured.  Rather, the petitioner must specifically 'identify members who have suffered the requisite harm."  *Sorenson Commc'ns, LLC v. FCC*, 897 F.3d 214, 224 (D.C. Cir. 2018) (citations omitted).

The Association "ha[s] failed to meet this burden because [it] neither argue[s] nor direct[s] the Court to evidence that any of [its] specific members has suffered a 'concrete and particularized' harm that is 'actual or imminent,'" *Am. Chem. Council v. Dep't of Transp.*, 468 F.3d 810, 819 (D.C. Cir. 2006), instead arguing about undifferentiated harm that will supposedly ensue to unidentified members at large.  That doesn't cut it under this Court's precedents.

10

The Association's declarations independently fail because they never quantify the potential economic impact on the Association's members collectively. The Association's first declaration, from its President and CEO Geoff Cooper, doesn't put a number on anything. It vaguely posits that additional exemptions "would cause a decrease in demand for the renewable fuel and feedstocks that RFA's members produce," and could "lower revenues for RFA's ethanol producer members." Cooper Dec. ¶¶ 12, 14. Those assertions are substantively identical to the language this Court already held legally insufficient in *Sinclair Wyoming*. 114 F.4th at 722 (rejecting CEO's assertion that exemptions would "substantially reduce the future demand for Growth Energy's members' renewable-fuel products").

The Association's second declaration, from its in-house economist, Scott Richman, fares no better. Mr. Richman likewise speaks in vague generalities about potential effects on the entire industry, rather than on the Association's members. *See*, *e.g.*, Richman Dec. ¶ 14 ("impact on the ethanol industry"); *id.* ¶ 16 (forecasting "a sizable negative economic impact to the ethanol industry overall and specifically to RFA members," but failing to quantify Association-specific impacts). For example, the

one time he attempts to quantify economic effects, the figure he gives is retrospective ("from February through August 2018") and industry-wide (claiming "industry revenues were at least $2.3 billion lower"). *Id.* ¶ 12. Neither Cooper nor Richman explains Association members' market share, other than to deem it "substantial," Cooper Dec. ¶ 2, so there's no basis to extrapolate any concrete and "certainly impending" impact on the Association's members from stale figures discussing purported effects on the entire industry years ago. *Sinclair Wyo. Refin. Co.*, 114 F.4th at 722 (citation omitted).

The inadequacies of Richman's declaration are particularly glaring because he prepared the successful declaration in *Renewable Fuels Association v. EPA*, 948 F.3d 1206 (10th Cir. 2020), which this Court upheld as a model in *Sinclair Wyoming*, 114 F.4th at 723 n.15. In the Tenth Circuit—unlike here—Richman "modeled how the actual demand for renewable fuels would be affected by RFS exemptions," *id.*, ultimately assessing "the annualized impact on RFA members' revenues [at] $1.2 billion," *Renewable Fuels Ass'n*, 948 F.3d at 1233. Richman's prior declaration (which quantified specific impacts on the Association's members) encapsulates why his current declaration (which doesn't) is deficient.

12

"[E]vidence" is particularly important in these cases because "[t]he dynamics of the RIN market are not so clear that [the Court] can assume without further information or analysis" how exempting certain RIN obligations will affect the revenues of the particular members of a trade association. *Sinclair Wyo. Refin. Co.*, 114 F.4th at 722–23. The Association's failure to provide that necessary evidence defeats its bid to intervene in "all" cases challenging EPA's August 2025 decisions.

In addition to clarifying the evidence needed to establish injury, *Sinclair Wyoming* also made clear that those asserting injury must link their alleged injuries to potential exemptions for the *specific refineries* at issue in the case. The Court emphasized that the case at hand concerned "only 31 small refineries," and that the relevant trade association "ha[d] offered no evidence about how a waiver of RFS obligations for *those refineries* will change the overall market demand for renewable fuels." *Sinclair Wyo. Refin. Co.*, 114 F.4th at 723 (emphasis added).

Here, if Case Nos. 25-1187 and 25-1197 are severed and consolidated, then *one* compliance year for only *two* refineries will be at issue. If the competitive impact of exemptions for 31 refineries is too difficult to

assess without concrete evidence, then the evidentiary bar for demon-
strating competitive impact from exempting just *two* refineries in a *single*
year is necessarily far higher.  Yet the Association doesn't even *assert*
injury from potential relief in Case Nos. 25-1187 and 25-1197 specifically,
much less quantify threatened effects with the kind of economic modeling
this Court endorsed in *Sinclair Wyoming*.

As a result, the Association has forfeited any request to intervene
in Nos. 25-1187 and 25-1197 in the event of severance.  To avoid forfei-
ture, the Association was obligated to make the needed showing of injury
in its motion to intervene.  *See City Utils. Of Springfield v. EPA*, 2024
WL 490397, *1 (D.C. Cir. Nov. 1, 2024) (per curiam); *see also Entergy
Ark., LLC v. FERC*, 134 F.4th 576, 581 (D.C. Cir. 2025).  Instead, it ig-
nored the severance issue and said nothing about its injury as to those
specific petitions.  That forfeiture precludes it from intervention in Case
Nos. 25-1187 and 25-1197 (at minimum) in the event of severance.

## II.    The Association's counterarguments are meritless.

Unable to satisfy this Court's intervention requirements, the Asso-
ciation falls back on a handful of meritless and irrelevant arguments.

14

First, the Association asserts that intervenors shouldn't be required to demonstrate standing when they seek to intervene in favor of a respondent. Mot. 12. While acknowledging that this Court's precedent is to the contrary, Mot. 11, the Association contends that precedent has been superseded by more recent Supreme Court decisions. But those decisions don't address the separate question whether Rule 15(d)'s "interest" requirement demands injury in fact. Regardless, this Court has already considered and rejected the Association's argument.

Just three months ago, this Court confirmed in *IGAS Holdings, Inc. v. EPA*, 146 F.4th 1126, 1135 n.2 (D.C. Cir. 2025), that its longstanding intervention precedent remains the law of the circuit. The Court cited one of the same cases that the Association now asserts should command the opposite rule. *Compare id.*, *with* Mot. 13 (citing *Little Sisters of the Poor Saints Peter & Paul Home v. Pennsylvania*, 591 U.S. 657 (2020)); *see also Old Dominion Elec. Coop. v. FERC*, 892 F.3d, 1223, 1232 n.2 (D.C. Cir. 2018) (explaining that *Town of Chester v. Laroe Estates, Inc.*, 581 U.S. 433 (2017), which the Association cites, "does not cast doubt upon, let alone eviscerate, [circuit] precedent") (citing *Dellums v. NRC*, 863 F.2d 968, 978 n.11 (D.C. Cir. 1988)).

While the Association suggests the Court could use "the *Irons* procedure" to overrule this longstanding precedent, Mot. 13 n.7 (italics added), doing so would be particularly inappropriate.  The *Irons* procedure is reserved for "minor or marginal issue[s]," *Nat'l Ass'n for Surface Finishing v. EPA*, 795 F.3d 1, 8 n.4 (D.C. Cir. 2015), not the repudiation of a decades-old principle reaffirmed just three months ago.

Second, the Association contends that "[c]ourts have consistently recognized" that similar arguments are enough to show injury, citing several decisions it asserts are supportive.  Mot. 9.  But those cases prove nothing.  Some are from other circuits and don't even involve the Association.  *See*, *e.g.*, *Hunt Refin. Co. v. EPA*, No. 23-12347, ECF #27 (11th Cir. Oct. 6, 2023) (Growth Energy); *San Antonio Refin., L.L.C. v. EPA*, No. 23-60399, ECF #51-2 (5th Cir. Sept. 12, 2023) (Growth Energy).  All of them predate this Court's decision in *Sinclair Wyoming*.  So none had occasion to apply that decision's clarified standards about economic modeling and refinery-specific harms.

Indeed, some of the Association's cited cases undermine its injury arguments.  For example, the Association includes within its string cite *Renewable Fuels Association v. EPA*, 948 F.3d 1206 (10th Cir. 2020)—the

same decision that illustrates why its current declarations are deficient. *See supra* p. 12. The bottom line is that when it comes to establishing injury, "past performance is no guarantee of future results." *Sinclair Wyo. Refin.*, 114 F.4th at 723.

Third, the Association posits in a footnote that it is eligible for "permissive intervention" under Federal Rule of Civil Procedure 24(b)(1)(B) because "it has 'a claim or defense that shares with the main action a common question of law or fact.'" Mot. 6 n.3. That argument is forfeited twice over. For one, the Court "need not consider cursory arguments made only in a footnote." *Hutchins v. District of Columbia*, 188 F.3d 531, 539 n.3 (D.C. Cir. 1999) (en banc). For another, the Association never suggests what "claim" or "defense" it would bring in a standalone suit. *See Jones v. Kirchner*, 835 F.3d 74, 83 (D.C. Cir. 2016) ("We apply forfeiture to unarticulated [legal] . . . theories.") (brackets in original; citation omitted). So the Court should disregard the Association's undeveloped request for permissive intervention.

## CONCLUSION

The Court should deny the Renewable Fuels Association's motion to intervene.

Dated:  October 27, 2025

Respectfully submitted,

/s/ *Daniel J. Feith*

Daniel J. Feith
   *Counsel of Record*
Peter C. Whitfield
Peter A. Bruland
Cody M. Akins
SIDLEY AUSTIN LLP
1501 K Street, NW
Washington, D.C.  20005
(202) 736-8000
dfeith@sidley.com

*Counsel for Petitioner*
*in No. 25-1187*

/s/ *Allyson N. Ho*

Allyson N. Ho
   *Counsel of Record*
Stephen J. Hammer
Robert W. Frey
GIBSON, DUNN & CRUTCHER LLP
2001 Ross Avenue, Suite 2100
Dallas, Texas  75201
(214) 698-3100
aho@gibsondunn.com

Lavi M. Ben Dor
M. Christian Talley
GIBSON, DUNN & CRUTCHER LLP
1700 M Street, NW
Washington, D.C.  20036
(202) 955-8500

*Counsel for Petitioners*
*in No. 25-1197*

**CERTIFICATE OF COMPLIANCE**

Pursuant to Federal Rule of Appellate Procedure 32(g)(1), the undersigned certifies that this response complies with the applicable typeface, type style, and type-volume limitations. This response was prepared using a proportionally spaced type (New Century Schoolbook, 14 point). Exclusive of the portions exempted by Federal Rule of Appellate Procedure 32(f) and D.C. Circuit Rule 32(e)(1), this response contains 3,205 words. This certificate was prepared in reliance on the word-count function of the word-processing system used to prepare this response.

October 27, 2025                    Respectfully submitted,

                                   _/s/ Allyson N. Ho_
                                   Allyson N. Ho
                                   GIBSON, DUNN & CRUTCHER LLP
                                   2001 Ross Avenue, Suite 2100
                                   Dallas, Texas 75201
                                   (214) 698-3100
                                   aho@gibsondunn.com

**CERTIFICATE OF SERVICE**

I hereby certify that, on October 27, 2025, I electronically filed the foregoing document with the Clerk for the United States Court of Appeals for the District of Columbia Circuit using the appellate CM/ECF system. Notice of this filing will be sent to all counsel of record by operation of the Court's electronic filing system.

October 27, 2025                           Respectfully submitted,

                                            /s/ Allyson N. Ho
                                           Allyson N. Ho
                                           GIBSON, DUNN & CRUTCHER LLP
                                           2001 Ross Avenue, Suite 2100
                                           Dallas, Texas  75201
                                           (214) 698-3100
                                           aho@gibsondunn.com