UNITED STATES COURT OF APPEALS
FOR THE DISTRICT OF COLUMBIA CIRCUIT

|  |  |  |
|---|---|---|
| REH COMPANY, LLC, | ) | |
| | ) | |
| *Petitioner,* | ) | |
| | ) | |
| v. | ) | No. 25-1180 (and |
| | ) | consolidated cases) |
| UNITED STATES ENVIRONMENTAL | ) | |
| PROTECTION AGENCY, | ) | |
| | ) | |
| *Respondent.* | ) | |
| | ) | |

**MOTION OF COALITION FOR RENEWABLE NATURAL GAS AND
SUSTAINABLE ADVANCED BIOFUEL REFINERS COALITION FOR
LEAVE TO INTERVENE ON BEHALF OF RESPONDENT**

The above-captioned consolidated cases involve challenges by more than two
dozen refiners to a final agency action by the U.S. Environmental Protection Agency
("EPA") entitled "August 2025 Decisions on Petitions for RFS Small Refinery
Exemptions" (referred to as "August 2025 Decision"). The August 2025 Decision
included EPA's decision on 175 small refinery exemption petitions submitted under
the Renewable Fuel Standard program related to compliance years 2016-2024. The
August 2025 Decision outlined general determinations regarding EPA's handling of
requests for "disproportionate economic hardship" exemptions and handling of any
Renewable Identification Numbers ("RINs") that may have been previously retired

by these refineries to show compliance with the volume requirements for those years. Notice of EPA's action was published in the Federal Register at 90 Fed. Reg. 41829 (Aug. 27, 2025). Pursuant to Federal Rules of Appellate Procedure 15(d) and 27 and D.C. Circuit Rules 15(b) and 27, Coalition for Renewable Natural Gas ("RNG COALITION") and Sustainable Advanced Biofuel Refiners Coalition ("SABR") (collectively referred to as "Movants") respectfully request leave to intervene on behalf of Respondent EPA.

RNG COALITION represents the renewable natural gas industry, including developers, owners and operators of renewable natural gas facilities, and distributors of renewable natural gas. Its members participate in the Renewable Fuel Standard program and generate RINs for compliance with the cellulosic biofuel volume requirements (referred to as "D3 RINs").[1] SABR represents the biodiesel industry, including stakeholders throughout the supply chain from feedstock producers to biodiesel producers to retail stations. Its members participate in the Renewable Fuel Standard program and generate RINs for compliance with the biomass-based diesel volume requirements (referred to as "D4 RINs"). Cellulosic biofuel and biomass-based diesel both qualify as "advanced biofuels" under the Renewable Fuel Standard program. A decision in favor of one or more of the refiners in this case would directly

---

[1] Renewable natural gas from certain feedstocks can also qualify as non-cellulosic advanced biofuel for generation of "D5" RINs under the Renewable Fuel Standard.

impact members of Movants, as it would result in additional RINs representing prior years' production entering the market that EPA has found will reduce demand for biofuels and RIN prices. 90 Fed. Reg. 45007, 45010 (Sept. 18, 2025). Intervention is warranted to ensure Movants are able to protect the distinct interests of their members. This motion is being filed within 30 days of the most recent petitions for review filed by several small refineries, including, but not limited to, Kern Oil & Refining Co. (No. 25-1219, filed October 21, 2025), Delek Refining Co. (No. 25-1229, filed October 24, 2025), and Placid Refining Co. (No. 25-1235, filed October 27, 2025), and, thus, it is timely. Intervention would not prejudice any of the parties.

Counsel for RNG COALITION and SABR contacted counsel for the parties in this case for their client's position on this motion. Petitioners in Case Nos. 25-1180, 25-1197, 25-1203 to 25-1214, and 25-1237 oppose the motion. Petitioner (No. 25-1226) and Movant-Intervenor Growth Energy does not object to the motion. Movant-Intervenor Clean Fuels Alliance America consents to the motion. No other responses were received by the time of this filing.

A corporate disclosure statement pursuant to Federal Rule of Appellate Procedure 26.1 and D.C. Circuit Rule 26.1 and a certificate of parties and *amici curiae* pursuant to D.C. Circuit Rules 27(a)(4) and 28(a)(1)(A) are also attached to this motion.

## I. Interests of Intervenor.

The Renewable Fuel Standard, first established by the Energy Policy Act of 2005 and then expanded by the Energy Independence & Security Act of 2007, requires a minimum volume of renewable fuel be sold or introduced into the U.S. transportation market each year. 42 U.S.C. §7545(o)(2). The purpose of the program is to promote the production of transportation fuels derived from renewable biomass, which provide numerous environmental, economic and energy security benefits. *Ams. for Clean Energy v. EPA*, 864 F.3d 691, 697 (D.C. Cir. 2017).

To establish compliance with the Renewable Fuel Standard's volume requirements, EPA translates the volume requirements into percentage standards used by refiners and importers of gasoline and diesel fuel—referred to as "obligated parties"—to determine their "renewable volume obligations." 42 U.S.C. §7545(o)(3)(B); 40 C.F.R. §80.1407. To show compliance with those obligations, obligated parties retire "RINs," which are generated by renewable fuel producers. 40 C.F.R. §§80.125, 80.1406(b), 80.1426, 80.1427(a). RINs can be obtained by purchasing renewable fuel with RINs assigned to those gallons or purchasing RINs that have been separated from the fuel pursuant to 40 C.F.R. §80.125 and §80.1429.

RINs represent the "credits" required by statute. 42 U.S.C. §7545(o)(5). Congress limited the life of those credits to 12 months as of the date of generation. *Id.* §7545(o)(5)(C). To implement this provision, EPA regulations allow obligated

parties to use RINs generated to show compliance for the year in which the RINs were generated or the next year. 40 C.F.R. §80.1427(a)(6). EPA, however, limits the ability to use prior-year RINs, referred to as "carryover RINs," to show compliance with 20 percent of the renewable volume obligations. 40 C.F.R. §80.1427(a)(5); 75 Fed. Reg. 14670, 14734-14735 (Mar. 26, 2010); 72 Fed. Reg. 23900, 23934-23935 (May 1, 2007). RINs that are not used for compliance for the year in which they were generated or the following year are expired and deemed "invalid RIN[s]" that "cannot be used for compliance purposes." 40 C.F.R. §80.1428(c).

The statute includes an exemption from the volume requirements for "small refineries" defined as "a refinery for which the average aggregate daily crude oil throughput for a calendar year (as determined by dividing the aggregate throughput for the calendar year by the number of days in the calendar year) does not exceed 75,000 barrels." 42 U.S.C. §7545(o)(1)(K). The statute exempted small refineries from the volume requirements until 2011. *Id.* § 7545(o)(9)(A)(i). After 2011, a small refinery may petition EPA for an exemption if the volume requirements "would impose a disproportionate economic hardship" on the refinery. *Id.* §7545(o)(9).

There has been much litigation and debate regarding the application of the small refinery exemption provision over the years, creating substantial uncertainty in the program and volatility in the market. The August 2025 Decision responded to court decisions that vacated earlier decisions on various small refinery exemption

petitions, issuing decisions on 175 petitions for compliance years 2016-2024. Ex. A to REH Company Petition for Review, No. 25-1180, at 4-6 [Doc. #2132515]. With respect to 38 refineries, EPA granted 63 full exemptions and 77 partial exemptions, and EPA denied 28 petitions and found 7 petitions ineligible for the exemption. *Id.* at 1. The August 2025 Decision describes EPA's evaluation of these petitions, which outlines its general policy on exemption requests moving forward. *Id.* at 6-19.

The August 2025 Decision also described how EPA will implement the decisions in the document, including when and how it will return any RINs that might have been previously retired by the small refineries to show compliance with the volume requirements for years in which the compliance deadline had already passed. *See* August 2025 Decision at 20-23. EPA determined that "Pre-2023 vintage RINs returned to small refineries will be 'expired,' meaning they cannot be used to meet future RFS compliance obligations," while "2023 RINs returned to small refineries will be available for trading or compliance with open 2024 RFS obligations." *Id.* at 20. EPA acknowledged it was taking a different approach than in other "exceptional circumstances" where it "permitted individual small refineries to generate new, current-year vintage RINs as a method of implementing exemptions" after a court vacated a denial of an exemption. *Id.* at 21. Refineries, including petitioners that have now obtained full or partial exemptions from EPA in this case (e.g., Kern Oil & Refining Co., Sinclair Casper refinery, and Sinclair Wyoming

refinery), have previously sought or obtained such RINs.[2] *See, e.g., Kern Oil & Ref. Co. v. EPA*, No. 21-71246, 2022 U.S. App. LEXIS 22794, 2022 WL 3369528 (9th Cir. Aug. 16, 2022); Jarrett Renshaw and Chris Prentice, *Exclusive – U.S. EPA grants refiners biofuel credits to remedy Obama-era waiver denials*, Reuters, May 31, 2018, https://www.reuters.com/article/world/uk/exclusive-us-epa-grants-refiners-biofuel-credits-to-remedy-obama-era-waiver-idUSKCN1IW1DI/.

EPA has acknowledged that retroactively granted exemptions reduce the volume requirements it sets. *See* 85 Fed. Reg. 7016, 7050 (Feb. 6, 2020) ("In more concrete terms, should EPA grant SREs without accounting for them in the percentage formula, those exemptions would effectively reduce the volumes of renewable fuel required by the RFS program, potentially impacting renewable fuel use in the U.S."). EPA has also found that, as a result of retroactively granted exemptions, the "influx of additional RINs in the market could have a deleterious effect on current and proposed volume requirements," including reducing demand and RIN prices. 90 Fed. Reg. at 45010. EPA did not account for these exemptions

---

[2] Although Kern Oil & Refining Co. ("Kern Energy") filed "its Kern Energy-specific decision" under seal, EPA's website indicates that Kern Energy received full exemptions for compliance years 2021, 2023, and 2024 and a partial exemption for compliance year 2022. Petition for Review, No. 25-1219, at 1-2 [Doc. #2141450]; EPA, *RFS Small Refinery Exemptions*, Table SRE-3, https://www.epa.gov/fuels-registration-reporting-and-compliance-help/rfs-small-refinery-exemptions (last updated Oct. 16, 2025). Table SRE-3 only lists petitions submitted after July 1, 2022.

in setting the volume requirements. The resulting impacts will directly and adversely affect members of Movants.

These impacts are more than likely to occur. Members of Movants have experienced the impacts of retroactive small refinery exemptions in prior years. *See, e.g.,* Dietz Decl. ¶10; Jobe Decl. ¶11. For example, it was found that small refinery exemptions "undermine demand for biofuels, creating instability and reducing the economic viability of new projects and infrastructure." Dietz Decl. ¶10 (citation omitted). Economic analysis also showed that biodiesel blending was reduced because of small refinery exemptions. Jobe Decl. ¶11. The influx of RINs associated with retroactively granted exemptions have been tied to a "nosedive" in RIN prices due to the oversupply of RINs and reduced demand for renewable natural gas. Dietz Decl. ¶10 (citation omitted). Reduced demand and lower RIN prices have also been experienced by the biodiesel industry as a result of small refinery exemptions that were retroactively granted. Jobe Decl. ¶11. Returning RINs would "artificially inflate the credit supply, disrupt the RFS framework, and inflict harm on the renewable fuels industry." Dietz Decl. ¶10 (citation omitted).

Based on information that is publicly available, many of the petitioning refineries here have obtained exemptions from EPA in the August 2025 Decision but likely take issue with EPA's determination on remedy. *See, e.g.,* REH Company, Non-Binding Statement of Issues to be Raised, Sept. 29, 2025, at 2 [Doc. #2137668].

A decision in this litigation overturning EPA's determination would adversely affect Movants' members that have invested in renewable natural gas, biodiesel, and/or own RINs generated under the Renewable Fuel Standard, including, but not limited to, developers, owners and operators of biofuel production facilities, marketers, and distributors of biofuels. Dietz Decl. ¶¶10-12; Jobe Decl. ¶¶11-12. The Court's determination could also set precedent. As such, Movants have a substantial interest in the outcome of this case.

## II. Reasons for Granting Intervention.

Movants should be permitted to intervene in this case because they have a significant, direct interest in the outcome of this case that will be harmed, and that interest will not be adequately represented in the absence of intervention. In addition, the motion to intervene is timely, and granting intervention will not adversely affect any party or the timely resolution of the case.

### A. Movants have a direct and substantial interest in the outcome of this case.

Movants have a substantial interest in the subject matter of this case. The Renewable Fuel Standard is aimed at increasing renewable fuel production, and renewable natural gas and biodiesel are fuels eligible to generate advanced biofuel RINs used to meet the volume requirements under the program.

Movants' interests in this case are more than sufficient to support intervention. This Court has recognized that the interest requirement under Federal Rule of Civil

Procedure 24(a) is met when the proposed intervenor has constitutional standing. *See Fund for Animals, Inc. v. Norton*, 322 F.3d 728, 735 (D.C. Cir. 2003). The Renewable Fuel Standard program is aimed at increasing renewable fuel production. Renewable natural gas makes up the vast majority of the cellulosic biofuel category, and biodiesel has long been a significant part of the program since its inception.

This Court has consistently found the regulated industry has standing in challenges to the relevant rule. *See S. Coast Air Quality Mgmt. Dist. v. EPA*, 472 F.3d 882, 895-96 (D.C. Cir. 2006). The outcome of this case can directly affect the volume requirements, and the standing of biofuel producers in actions related to EPA's implementation of the volume requirements is "self-evident." *Sierra Club v. EPA,* 292 F.3d 895, 899-900 (D.C. Cir. 2002). Movants meet Article III standing requirements because their members produce fuels eligible to meet the volume requirements under the Renewable Fuel Standard program that is the subject of this litigation, and the individual participation of the members in the case is not required. *See Am. Fuels & Petrochemical Mfrs. v. EPA,* 3 F.4th 373, 379 (D.C. Cir. 2021); *Alon Ref. Krotz Springs, Inc. v. EPA*, 936 F.3d 628, 664-65 (D.C. Cir. 2019); *Nat'l Biodiesel Bd. v. EPA*, 843 F.3d 1010, 1015-1016 (D.C. Cir. 2016); *see also Diamond Alt. Energy, LLC v. EPA*, 145 S. Ct. 2121, 2135-2136 (2025) (finding decrease in purchases of fuel as a result of challenged action "hurts their bottom line" to establish injury of fuel producers and "commonsense economic realities" are sufficient to

support standing). Advocating on behalf of its members with respect to proper implementation of the Renewable Fuel Standard program is germane to Movants' purposes. Dietz Decl. ¶¶2, 11; Jobe Decl. ¶2.

As this Court has found, the Renewable Fuel Standard is a market forcing policy, essentially setting the market for renewable fuels in the transportation sector, including cellulosic biofuels and biomass-based diesel, and reducing those requirements will adversely impact demand, including for renewable natural gas and biodiesel produced and sold by and for RINs generated by Movants' members. *See Ams. for Clean Energy*, 864 F.3d at 710. The challenges here seek to overturn decisions by EPA that would increase the impact of small refinery exemptions on the biofuel volume requirements.

Based on EPA's estimates, approximately 3 billion new RINs would be introduced into the market just if its determination not to grant new RINs to replace expired RINs is overturned. *See* August 2025 Decision at 21-22. Based on the June 2025 Refinery Capacity Report by the U.S. Energy Information Administration ("EIA"), refineries that have filed petitions for review (and received one or more exemptions in the August 2025 Decision) represent at least 6.8 billion gallons in annual refining capacity, which is a significant portion of the volumes EPA has exempted for each year according to Table SRE-1 on EPA's website. *See* EIA, *Refinery Capacity Report*, June 2025 (with data as of January 1, 2025),

https://www.eia.gov/petroleum/refinerycapacity/refcap25.pdf; EPA, *RFS Small Refinery Exemptions*, Table SRE-1, https://www.epa.gov/fuels-registration-reporting-and-compliance-help/rfs-small-refinery-exemptions (last updated Oct. 16, 2025).[3] This represents a significant number of RINs that could impact renewable natural gas and biodiesel producers. *See* Dietz Decl. ¶12; Jobe Decl. ¶12. As noted above, increasing the supply of RINs as a result of retroactively granted small refinery exemptions has been found by EPA to reduce demand and RIN prices. Reduced demand and reduced RIN prices, which are considered in estimating returns on investments and sales prices, adversely impacts investments that have been made and future investments and revenues, directly impacting members of Movants that own RINs and that sell biofuels based on pricing that considers RINs. Dietz Decl. ¶¶10-11; Jobe Decl. ¶¶11-12.

---

[3] This is based on the following reported capacities: HF Sinclair Woods Cross Refining LLC (39,330 barrels per calendar day (bpd)); HF Sinclair Casper Refining Company (31,000 bpd); HF Sinclair Wyoming Refining Co. (75,000 bpd); Calumet Shreveport Refining LLC (57,000 bpd); Calumet Montana Refining LLC (15,000 bpd); Kern Oil & Refining Co. (26,000 bpd); Delek Refining LTD (74,000 bpd); Placid Refining Co. (75,000 bpd); Wyoming Refining Company (18,000 bpd); and Suncor Energy Inc. (East) (36,000 bpd). The bpd was multiplied by 42 gallons/barrel and by 365 days/year to convert to gallons per year. Where EPA did not provide a full list of all the refineries receiving exemptions for all years and more specific information was provided by petitioners under seal, this does not include all the refineries filing petitions that may have received exemptions in the August 2025 Decision. These refineries also may have received exemptions for more than one year, although some may only have been partial versus full exemptions.

Due to similar potential harms as a result of a potential adverse decision by this Court, biofuels producers have routinely been granted intervention in cases involving the Renewable Fuel Standard program. *See* Order, *Center for Biological Diversity v. EPA*, No. 23-1177 and consolidated cases (D.C. Cir. Nov. 16, 2023) [Doc. #2027447] (attached); Order, *Am. Fuel & Petrochemical Mfrs. v. EPA*, No. 24-1163 (D.C. Cir. July 29, 2024) [Doc. #2067091] (attached). Intervention has also been granted to biofuel stakeholders in challenges involving decisions related to small refinery exemptions under the Renewable Fuel Standard. *Sinclair Wyoming Ref. Co. LLC v. EPA*, No. 22-1073, 2023 U.S. App. LEXIS 4255 (D.C. Cir. Feb. 22, 2023) (granting motion of biofuel and feedstock trade associations to intervene in case involving challenges to EPA small refinery exemption decision); *Calumet Mont. Ref., LLC v. EPA*, No. 23-1194, 2023 U.S. App. LEXIS 28126 (D.C. Cir. Oct. 23, 2023) (finding biofuel trade association met requirements for intervention in challenges to denial of small refinery exemption requests under Renewable Fuel Standard program).

In addition, Movants' members would also suffer competitive harms if the refineries' challenges succeeded where petroleum refiners (i.e., obligated parties) are competitors of biofuels in the transportation sector. Granting additional exemptions and/or returning RINs to those competitors would give them a competitive advantage over Movants' members. "The [Supreme] Court routinely

recognizes probable economic injury resulting from agency actions that alter competitive conditions as sufficient to satisfy the [Article III 'injury-in-fact' requirement]." *Am. Petroleum Inst. v. Johnson*, 541 F. Supp. 2d 165, 177 (D.D.C. 2008) (quoting 3 Richard Pierce, Administrative Law Treatise §16.4 at 1122 (4th ed. 2002)) (alterations in original); *see also Clinton v. City of N.Y.*, 524 U.S. 417, 432-33 (1998) (finding regulatory impact on business decisions raises "sufficient likelihood of economic injury to establish standing under [Supreme Court] precedent") (citations omitted); *Advanced Energy United, Inc. v. FERC*, 82 F.4th 1095, 1107-1108 (D.C. Cir. 2023) (noting competitor standing can be based on "when agencies lift regulatory restrictions on their competitors or otherwise allow increased competition") (quoting *Am. Fuel & Petrochemical Mfrs. v. EPA,* 3 F.4th 373, 379 (D.C. Cir. 2021)).

Further, the Court's ruling could set precedent on how EPA addresses small refinery exemption requests in later years. Indeed, exemption requests submitted for compliance years 2021-2023 remain pending, including requests filed after the August 2025 Decision even though the compliance deadlines for those years have long since passed.[4] Thus, the ability of Movants to protect the interests of their members will be impaired if they are not able to participate in this litigation.

---

[4] According to Tables SRE-2 and SRE-3 on EPA's small refinery exemption website (https://www.epa.gov/fuels-registration-reporting-and-compliance-help/rfs-small-

**B.     Movants' interests are not adequately represented by any of the existing parties.**

Intervention is appropriate and necessary to adequately protect Movants' interests. The burden of showing inadequate representation "is not onerous," and an "applicant need only show that representation of his interest 'may be' inadequate, not that representation will in fact be inadequate." *Dimond v. District of Columbia*, 792 F.2d 179, 192 (D.C. Cir. 1986) (quoting *Trbovich v. United Mine Workers*, 404 U.S. 528, 538 n.10 (1972)) (other citations omitted). Where refiner petitioners seek to either further reduce their obligations and/or receive new RINs to remedy the exemptions received, the petitioners and Movants have divergent interests regarding EPA's implementation of the volume requirements under the Renewable Fuel Standard program. Petitioner Renewable Fuels Association and Petitioner Growth Energy also do not represent Movants' interests, as they are likely challenging issues that Movants would not seek to defend.

This Court has also looked "skeptically on government entities serving as adequate advocates for private parties." *Crossroads Grassroots Policy Strategies v. FEC*, 788 F.3d 312, 321 (D.C. Cir. 2015) (citing *Fund for Animals*, 322 F.3d at 736 and *Natural Res. Def. Council v. Costle*, 561 F.2d 904, 912-13 (D.C. Cir. 1977)). EPA is the government agency responsible for implementing and administering the

---

refinery-exemptions), there are four exemptions pending for compliance year 2021, two are pending for compliance year 2022, and eight for compliance year 2023.

Renewable Fuel Standard. Accordingly, Respondent EPA is not able to represent adequately Movants' member companies' interests. *See Dimond*, 792 F.2d at 192-93 ("A government entity ... is charged by law with representing the public interest of its citizens. ... The District [of Columbia] would be shirking its duty were it to advance th[e] narrower interest [of a business concern] at the expense of its representation of the general public interest") (citations omitted); *see also Natural Res. Def. Council*, 561 F.2d at 912 (finding EPA did not adequately represent interests of proposed industry intervenors where appellants' interest "is more narrow and focused than EPA, being concerned primarily with the regulation that affects *their* industries").

Moreover, Movants provide a different perspective than EPA on the need for robust volume requirements. And Movants likely have different positions than EPA on the issues raised in this litigation. Movants have raised concerns with the ongoing grant of small refinery exemptions and have opposed the issuance of retroactive exemptions. Although other biofuel interests have moved to intervene in this case, RNG COALITION uniquely represents the interests of the renewable natural gas industry, which represents the vast majority of the cellulosic biofuel volumes under the Renewable Fuel Standard. Dietz Decl. ¶¶2, 7. SABR also uniquely represents the interests of the biodiesel industry and was formed because of the unique disadvantages being felt by biodiesel producers in the biomass-based diesel category

under the Renewable Fuel Standard program. Jobe Decl. ¶2. These associations have also taken different positions on various aspects of the Renewable Fuel Standard program as other biofuel interests, as EPA's implementation may impact biofuels differently. This Court has recognized that biofuel groups may have distinct issues and has routinely granted intervention to different biofuel associations. Nonetheless, no intervention has been granted to date, and the intervention of RNG COALITION and SABR will not prejudice the existing parties.

For all these reasons, Movants can more than meet their burden to show that the existing parties do not adequately represent their or their members' interests.

### C. The requested intervention would be timely and consistent with the orderly resolution of the case.

Under Federal Rule of Appellate Procedure 15(d), a motion for leave to intervene "must be filed within 30 days after the petition for review is filed and must contain a concise statement of the interest of the moving party and the grounds for intervention." The current motion is being filed within 30 days of the filing of petitions for review filed by several small refineries, including, but not limited to, Kern Oil & Refining Co. (No. 25-1219, filed October 21, 2025), Delek Refining Co. (No. 25-1229, filed October 24, 2025), and Placid Refining Co. (No. 25-1235, filed

October 27, 2025), and, therefore, is timely. Under D.C. Circuit Rule 15(b), granting intervention in one case grants intervention in all cases.[5]

Moreover, this case is in its early stages, and no schedule for the filing of briefs has been issued to date. Granting Movants intervention will not delay the proceedings in this Court and will not cause undue prejudice to any party. On the other hand, if intervention is not granted, Movants' ability to defend the interests of their members in this proceeding will be severely prejudiced.

WHEREFORE, Coalition for Renewable Natural Gas and Sustainable Advanced Biofuel Refiners Coalition respectfully request that the Court enter an order granting leave to intervene in support of Respondent.

Dated:  October 29, 2025

Respectfully submitted,

/s/ Sandra P. Franco
Sandra P. Franco
Franco Environmental Law, LLC
600 Pennsylvania Avenue, SE
Unit 15577
Washington, DC 20003
T 202 256-6115
sandra@francoenvironmentallaw.com

*Counsel for Coalition for Renewable Natural Gas and Sustainable Advanced Refiners Coalition*

---

[5] Petitioners in Nos. 25-1187 and 25-1197 have moved to sever their related issue, which they have represented as challenging EPA's determination as to their ineligibility for an exemption based on their production. Movants take no position on such motion.

# CERTIFICATE OF COMPLIANCE

The undersigned hereby certifies that:

1)      This motion complies with the type-volume limitation of Federal Rule of Appellate Procedure 27(d)(2)(A) because it contains 4,018 words, excluding the exempted portions.

2)      This motion complies with the typeface and type style requirements of Federal Rules of Appellate Procedure 27(d)(1)(E) and 32(a)(5-6) because it was prepared in a proportionally spaced typeface using Microsoft Word for Microsoft 365 in 14-point Times New Roman font.

/s/ Sandra P. Franco
Sandra P. Franco

UNITED STATES COURT OF APPEALS
FOR THE DISTRICT OF COLUMBIA CIRCUIT

| | |
|---|---|
| REH COMPANY, LLC, ) | |
| ) | |
| *Petitioner,* ) | |
| ) | |
| v. ) | No. 25-1180 (and |
| ) | consolidated cases) |
| UNITED STATES ENVIRONMENTAL ) | |
| PROTECTION AGENCY, ) | |
| ) | |
| *Respondent.* ) | |
| ) | |

## RULE 26.1 CORPORATE DISCLOSURE STATEMENT

Pursuant to Federal Rule of Appellate Procedure 26.1 and D.C. Circuit Rule 26.1, undersigned counsel makes the following disclosures.

Coalition for Renewable Natural Gas ("RNG COALITION") has no parent companies, and no publicly held company has a 10% or greater ownership interest. It has not issued shares or debt securities to the public.

RNG COALITION is a non-profit association of companies and organizations dedicated to the advancement of renewable natural gas as a clean, green, alternative, and domestic energy and fuel resource. It advocates on behalf of its members and provides education for the public in support of the sustainable development, deployment, and utilization of renewable natural gas, including participating in regulatory proceedings and litigation involving implementation of the Renewable

1

Fuel Standard program by the U.S. Environmental Protection Agency, as well as other regulatory actions that may impact the renewable natural gas industry. RNG COALITION's membership includes companies throughout the value chain of waste feedstock conversion to transportation fuel under the Renewable Fuel Standard program.

Sustainable Advanced Biofuel Refiners Coalition ("SABR") has no parent companies, and no publicly held company has a 10% or greater ownership interest. It has not issued shares or debt securities to the public.

SABR is an association of stakeholders that have invested in building out America's first advanced biofuel—biodiesel. It started as the Small Advanced Biofuel Refiners Coalition and changed its name to Sustainable Advanced Biofuel Refiners Coalition, as its membership grew to include stakeholders from every link in the value chain from feedstock growers to biodiesel producers, distributors, retailers, and consumers, as well as infrastructure, products, and services suppliers. SABR advocates to support the interests of its members, including proper implementation of the Renewable Fuel Standard program.

RNG COALITION and SABR are each a "trade association" as defined in Circuit Rule 26.1(b).

Dated:  October 29, 2025                    Respectfully submitted,

                                            /s/ Sandra P. Franco
                                            Sandra P. Franco
                                            Franco Environmental Law, LLC
                                            600 Pennsylvania Avenue, SE
                                            Unit 15577
                                            Washington, DC 20003
                                            T 202 256-6115
                                            sandra@francoenvironmentallaw.com

                                            *Counsel for Coalition for Renewable*
                                            *Natural Gas and Sustainable Advanced*
                                            *Biofuel Refiners Coalition*

# UNITED STATES COURT OF APPEALS
## FOR THE DISTRICT OF COLUMBIA CIRCUIT

|  |  |  |
|---|---|---|
| REH COMPANY, LLC, | ) | |
| | ) | |
| *Petitioner,* | ) | |
| | ) | |
| v. | ) | No. 25-1180 (and |
| | ) | consolidated cases) |
| UNITED STATES ENVIRONMENTAL | ) | |
| PROTECTION AGENCY, | ) | |
| | ) | |
| *Respondent.* | ) | |

## CERTIFICATE AS TO PARTIES

As required by D.C. Circuit Rule 27(a)(4) and pursuant to D.C. Circuit Rule 28(a)(1)(A), the following Certificate as to Parties and *Amici* is made on behalf of Coalition for Renewable Natural Gas and Sustainable Advanced Biofuel Refiners Coalition.

This is a matter on petition for review of an agency action undertaken by the U.S. Environmental Protection Agency entitled "August 2025 Decisions on Petitions for RFS Small Refinery Exemptions." Notice of EPA's action was published in the Federal Register at 90 Fed. Reg. 41829 (Aug. 27, 2025). There was no action in the district court, and so there were no parties in the district court.

As of the time of filing, the parties are:

**<u>Petitioners:</u>**

REH Company, LLC (No. 25-1180)

Alon Refining Krotz Springs Inc. (Nos. 25-1187, 25-1230)

Calumet Shreveport Refining LLC (No. 25-1195)

Calumet Montana Refining, LLC (No. 25-1196)

HF Sinclair Refining & Marketing LLC (Nos. 25-1197, 25-1203, 25-1204, 25-1205, 25-1206, 25-1207, 25-1208, 25-1209, 25-1210, 25-1211, 25-1212, 25-1213, 25-1214)

HF Sinclair Parco Refining LLC (Nos. 25-1197, 25-1208)

HF Sinclair Casper Refining LLC (Nos. 25-1203, 25-1204, 25-1205)

HF Sinclair Cheyenne Refining LLC (Nos. 25-1206, 25-1207)

HF Sinclair Woods Crossing Refining LLC (Nos. 25-1209, 25-1210, 25-1211, 25-1212, 25-1213, 25-1214)

Kern Oil & Refining Co. (No. 25-1219)

Growth Energy (No. 25-1226)

Renewable Fuels Association (No. 25-1228)

Delek Refining Ltd. (No. 25-1229)

Lion Oil Company LLC (No. 25-1231)

CHS Inc. (No. 25-1232)

American Refining Group, Inc. (No. 25-1233)

Countrymark Refining and Logistics LLC (No. 25-1234)

Placid Refining Company LLC (No. 25-1235)

San Joaquin Refining Co., Inc. (No. 25-1236)

Big West Oil, LLC (No. 25-1237)

Par Montana, LLC (No. 25-1238)

U.S. Oil & Refining Company (No. 25-1239)

Wyoming Refining Co. (No. 25-1240)

The San Antonio Refinery LLC (No. 25-1241)

Wynnewood Refining Company, LLC (No. 25-1242)

Ergon Refining, Inc. (No. 25-1243)

Ergon-West Virginia, Inc. (No. 25-1244)

Alon USA, LP (No. 25-1245, 25-1246)

Hunt Refining Company (No. 25-1247)

Suncor Energy Inc. (No. 25-1248, 25-1249)

**Respondents:**

U.S. Environmental Protection Agency; and

U.S. Department of Energy (Nos. 25-1229, 25-1230, 25-1231, 25-1232, 25-1245, 25-1246, 25-1247, 25-1248, 25-1249).

**Intervenors and Amici:** Growth Energy, Renewable Fuels Association, and Clean Fuels Alliance America have moved to intervene in support of Respondent EPA in these consolidated cases. Coalition for Renewable Natural Gas and

Sustainable Advanced Biofuel Refiners Coalition are not aware that any parties have been granted intervention or participation as *amicus curiae* at this time.

In addition, there is a motion pending to consolidate Case No. 25-1180 with Case Nos. 24-1310 and 24-1311, which has been opposed by Respondent EPA. Respondent EPA has also moved to dismiss Case Nos. 24-1310 and 24-1311 on mootness grounds. The parties in those cases are REH Company, LLC, Petitioner, and U.S. Environmental Protection Agency, Respondent. On October 28, 2025, Petitioner REH Company, LLC moved to voluntarily dismiss Case Nos. 24-1310 and 24-1311.

Dated: October 29, 2025

Respectfully submitted,

/s/ Sandra P. Franco
Sandra P. Franco
Franco Environmental Law, LLC
600 Pennsylvania Avenue, SE
Unit 15577
Washington, DC 20003
T 202 256-6115
sandra@francoenvironmentallaw.com

*Counsel for Coalition for Renewable Natural Gas and Sustainable Advanced Biofuel Refiners Coalition*

| | |
|---|---|
| REH COMPANY, LLC, | ) |
| | ) |
| *Petitioner,* | ) |
| | ) |
| v. | ) No. 25-1180 (and |
| | ) consolidated cases) |
| UNITED STATES ENVIRONMENTAL | ) |
| PROTECTION AGENCY, | ) |
| | ) |
| *Respondent.* | ) |

## CERTIFICATE OF SERVICE

I hereby certify that on the 29th day of October, 2025, I caused the Motion of Coalition for Renewable Natural Gas and Sustainable Advanced Biofuel Refiners Coalition for Leave to Intervene on Behalf of Respondent and accompanying papers to be electronically filed with the Clerk of the U.S. Court of Appeals for the D.C. Circuit by using the Court's appellate CM/ECF system and that service will be accomplished by the appellate CM/ECF system.

/s/ Sandra P. Franco
Sandra P. Franco