# In the United States Court of Appeals for the District of Columbia Circuit

---

REH COMPANY, ET AL.,

*Petitioners,*

v.

U.S. ENVIRONMENTAL PROTECTION AGENCY,

*Respondent.*

---

On Petition for Review of a Final Decision of the
Environmental Protection Agency, 90 Fed. Reg. 41,829 (Aug. 27, 2025)

---

## JOINT RESPONSE IN OPPOSITION TO CLEAN FUELS ALLIANCE AMERICA'S MOTION TO INTERVENE

---

Allyson N. Ho
  *Counsel of Record*
Stephen J. Hammer
Robert W. Frey
GIBSON, DUNN & CRUTCHER LLP
2001 Ross Avenue, Suite 2100
Dallas, TX 75201
(214) 698-3100
aho@gibsondunn.com

*Counsel for Petitioners
in No. 25-1197*

Daniel J. Feith
  *Counsel of Record*
Peter C. Whitfield
Peter A. Bruland
Cody M. Akins
SIDLEY AUSTIN LLP
1501 K Street, NW
Washington, DC 20005
(202) 736-8000
dfeith@sidley.com

*Counsel for Petitioner
in No. 25-1187*

October 31, 2025

(additional counsel listed on inside cover)

Lavi M. Ben Dor
M. Christian Talley
GIBSON, DUNN & CRUTCHER LLP
1700 M Street, NW
Washington, DC 20036
(202) 955-8500

*Counsel for Petitioners
in No. 25-1197*

# TABLE OF CONTENTS

Glossary ........................................................................................................... v

Introduction ..................................................................................................... 1

Background ....................................................................................................... 2

    A.   Legal background. ................................................................... 2

    B.   Factual and procedural background. ..................................... 4

Argument ......................................................................................................... 6

The Court should deny leave to intervene because the Alliance
has not shown that granting the petitions for review would injure its
members. ......................................................................................................... 6

    A.   Intervenors must show that they would be injured by an
        unfavorable decision. ............................................................. 7

    B.   The Alliance has not shown that granting the petitions
        would injure its members. ...................................................... 8

    C.   The Alliance does not even try to establish injury
        from granting Krotz Springs' and Parco's petitions. ........... 13

    D.   The Alliance's arguments are unsound. ............................... 15

    E.   The Court should decline the Alliance's invitation
        to overturn its longstanding injury rule. ............................. 17

Conclusion ...................................................................................................... 19

Certificate of Compliance

Certificate of Service

Addendum

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Bldg. & Const. Trades Dep't v. Reich,*
40 F.3d 1275 (D.C. Cir. 1994) ................................................. 7

*Broidy Cap. Mgmt. LLC v. Muzin,*
61 F.4th 984 (D.C. Cir. 2023) ................................................. 8

*Cal. Steel Indus., Inc. v. United States,*
48 F.4th 1336 (Fed. Cir. 2022) ............................................ 7, 8

*City Utils. of Springfield v. EPA,*
2024 WL 4903937 (D.C. Cir. Nov. 1, 2024) ......................... 15

*Defs. of Wildlife v. Perciasepe,*
714 F.3d 1317 (D.C. Cir. 2013) ............................................... 7

*Deutsche Bank Nat'l Tr. Co. v. FDIC,*
717 F.3d 189 (D.C. Cir. 2013) ................................................. 8

*Entergy Arkansas, LLC v. FERC,*
134 F.4th 576 (D.C. Cir. 2025) ............................................. 15

*HollyFrontier Cheyenne Refin., LLC v.*
*Renewable Fuels Ass'n,*
594 U.S. 382 (2021) ........................................................... 3, 4

*IGas Holdings, Inc. v. EPA,*
146 F.4th 1126 (D.C. Cir. 2025) ........................................... 17

*Irons v. Diamond,*
670 F.2d 265 (D.C. Cir. 1981) ............................................... 17

*Mil. Toxics Project v. EPA,*
146 F.3d 948 (D.C. Cir. 1998) .......................................... 8, 16

*Mohawk Indus., Inc. v. Carpenter,*
558 U.S. 100 (2009) ............................................................. 19

*Mowrer v. Dep't of Transp.*,
  14 F.4th 723 (D.C. Cir. 2021) ........................ 18

*Nat'l Ass'n for Surface Finishing v. EPA*,
  795 F.3d 1 (D.C. Cir. 2015) ........................ 18

*Nat'l Biodiesel Bd. v. EPA*,
  843 F.3d 1010 (D.C. Cir. 2016) ........................ 12

*Producers of Renewables United for Integrity Truth &*
  *Transparency v. EPA*,
  2022 WL 538185 (10th Cir. Feb. 23, 2022) ........................ 11

*Renewable Fuels Ass'n v. EPA*,
  948 F.3d 1206 (10th Cir. 2020) ........................ 11

*S. Christian Leadership Conf. v. Kelley*,
  747 F.2d 777 (D.C. Cir. 1984) ........................ 7

*In re Sealed Case No. 97-3112*,
  181 F.3d 128 (D.C. Cir. 1999) ........................ 18

*Sinclair Wyo. Refin. Co. v. EPA*,
  114 F.4th 693 (D.C. Cir. 2024) ................ 1, 9, 10, 11, 12, 14, 16, 17

*Steel Co. v. Citizens for a Better Env't*,
  523 U.S. 83 (1998) ........................ 16

*Summers v. Earth Island Inst.*,
  555 U.S. 488 (2009) ........................ 10

*Va. House of Delegates v. Bethune-Hill*,
  587 U.S. 568 (2019) ........................ 17

*Winters v. Taskila*,
  88 F.4th 665 (6th Cir. 2023) ........................ 18

**Statutes**

42 U.S.C. §7545(o)(1)(K) ........................ 4, 5

42 U.S.C. § 7545(o)(2)(A) ........................ 2

42 U.S.C. § 7545(o)(2)(B)(i) ................................................................ 2

42 U.S.C. § 7545(o)(5)(A)(i) ................................................................ 3

42 U.S.C. § 7545(o)(9)(B)(i) ................................................................ 4

40 C.F.R. § 80.1426(a) ....................................................................... 3

40 C.F.R. § 80.1427(a) ....................................................................... 3

40 C.F.R. § 80.1428(c) ....................................................................... 3

40 C.F.R. § 80.1429(b) ....................................................................... 3

88 Fed. Reg. 44,468 (July 12, 2023) ............................................. 2

90 Fed. Reg. 41,829 (Aug. 27, 2025) ........................................... 4

**Rules**

Fed. R. App. P. 15(d) ........................................................................ 7

Fed. R. Civ. P. 24(a) ......................................................................... 7

**Other Authority**

Douglas H. Ginsburg & Donald Falk, *The Court En Banc: 1981–1990*, 59 Geo. Wash. L. Rev. 1008 (1991) .................................. 18

U.S. Courts, *Report of the Appellate Rules Advisory Committee* (Oct. 15, 2025) .................................................................. 19

# GLOSSARY

| | |
|---|---|
| EPA | Environmental Protection Agency |
| RINs | Renewable Identification Numbers |

## INTRODUCTION

Clean Fuels Alliance America wants to join this case as a party, without the burden of showing that it faces any injury from the relief petitioners seek. But Federal Rule of Appellate Procedure 15(d) requires more. Under this Court's longstanding precedent, only those who face the invasion of a legally protected interest—an injury in fact—are entitled to intervene and become parties. That bedrock rule, reaffirmed by this Court countless times over the last forty years, is dispositive here.

Just last year, this Court told another renewable-fuel interest group that "sparse and conclusory claims about competitive injuries" are not enough to show injury from small-refinery exemptions. *Sinclair Wyo. Refin. Co. v. EPA*, 114 F.4th 693, 722 (D.C. Cir. 2024). Instead, the crucial question is how granting relief to the *specific refineries* at issue would inflict injury. *Id.* at 723. Yet the Alliance sidesteps that question—asserting only that demand for biomass-based diesel could drop if the Court grants relief to refineries writ large. That's not enough for intervention. Nor does the Alliance even try to explain why it should be allowed to intervene in Case Nos. 25-1187 and 25-1197, which implicate just *two*

refineries' petitions for exemption in a *single* compliance year, if this Court grants the pending motions to sever those cases.

Unable to satisfy this Court's injury requirement, the Alliance briefly claims that the requirement is no longer good law. Mot. 8. But the Court confirmed just three months ago that its longstanding intervention rules remain binding circuit precedent. Because the Association can't satisfy those rules—and because its request to depart from them is baseless—the Court should deny leave to intervene.

## BACKGROUND

### A. Legal background

The Renewable Fuel Standard requires obligated parties (*i.e.*, oil refineries and fuel importers) to blend certain percentages of renewable fuels into the transportation fuels they produce or import. *See* 42 U.S.C. § 7545(o)(2)(A). EPA sets those percentages on an annual, calendar-year basis. *See, e.g.*, *Renewable Fuel Standard (RFS) Program: Standards for 2023-2025 and Other Changes*, 88 Fed. Reg. 44,468 (July 12, 2023); *see also* 42 U.S.C. § 7545(o)(2)(B)(i) (setting annual volumes of renewable fuel through 2022).

EPA implements the Renewable Fuel Standard through a system of renewable fuel credits, called "Renewable Identification Numbers" (or

RINs, for short). *See* 42 U.S.C. § 7545(o)(5)(A)(i). Producers or importers of renewable fuel generate RINs for each qualifying gallon of renewable fuel they introduce as transportation fuel into the United States. 40 C.F.R. § 80.1426(a). When an entity blends the renewable fuel with traditional fuels (like gasoline) or uses that fuel as transportation fuel, that entity "separates" the RIN from its associated batch of renewable fuel. *Id.* § 80.1429(b). Once separated, RINs may be sold or used by an obligated party to demonstrate compliance. *See id.* §§ 80.1425–.1429.

An obligated party demonstrates compliance with the Renewable Fuel Standard by "retir[ing]" enough RINs to satisfy its obligations under the Standard. *Id.* § 80.1427(a)(1). "Any given refinery may therefore comply with the law thanks to its own blending efforts, the purchase of credits from someone else, or a combination of both." *HollyFrontier Cheyenne Refin., LLC v. Renewable Fuels Ass'n*, 594 U.S. 382, 386 (2021). RINs have an expiration date, however. A RIN may be used to demonstrate compliance only for the calendar year in which it was generated or the following calendar year. 40 C.F.R. § 80.1427(a)(6). A RIN generated in 2024, for example, may be used to satisfy 2024 or 2025 obligations, but a

2024 RIN is "invalid" to satisfy compliance, and thus worthless, for 2026 and beyond. *Id.* § 80.1428(c).

In establishing the Renewable Fuel Standard, "Congress was concerned" that compliance obligations "could work special burdens on small refineries." *HollyFrontier*, 594 U.S. at 386. To relieve those burdens, Congress authorized small refineries to petition EPA for an exemption from their obligations "for the reason of disproportionate economic hardship." 42 U.S.C. § 7545(o)(9)(B)(i). The small-refinery exemption is available to any "refinery for which the average aggregate daily crude oil throughput for a calendar year (as determined by dividing the aggregate throughput for the calendar year by the number of days in the calendar year) does not exceed 75,000 barrels." *Id.* § 7545(o)(1)(K).

## B. Factual and procedural background

In August 2025, EPA decided 175 small-refinery-exemption applications. *See Notice of August 2025 Decisions on Petitions for Small Refinery Exemptions Under the Renewable Fuel Standard Program*, 90 Fed. Reg. 41,829 (Aug. 27, 2025). Since then, forty-one petitions for review have been filed in this Court challenging EPA's decisions. *See REH Co. v. EPA*, No. 25-1180 (listing consolidated cases).

Although many of the petitions are likely to raise issues common to many refineries, petitioners Alon Refining Krotz Springs, Inc. (in No. 25-1187) and HF Sinclair Parco Refining LLC (in No. 25-1197) seek review of a determination uniquely affecting their two refineries. Specifically, EPA denied each refinery's application for a *2024* exemption on the grounds that, even though they met the definition of "small refinery" in 2024, they did not meet it in *2023* and so were purportedly ineligible under EPA regulations. EPA 2025 Order 6. *But see* 42 U.S.C. §7545(o)(1)(K) (defining a "small refinery" as one whose "average aggregate daily crude oil throughput for *a* calendar year … does not exceed 75,000 barrels" (emphasis added)).

Because litigating that issue on the usual schedule would deny them effective relief, Krotz Springs and Parco both moved to sever their cases from the consolidated cases and to expedite briefing and consideration. As they explained, EPA's eligibility determination raises a discrete legal question affecting just their two refineries, and time is of the essence because 2024 RINs will soon expire. Both motions remain pending. Together, Krotz Springs' and Parco's cases implicate just two of the 175 exemption petitions resolved in EPA's August 2025 decisions.

On October 21, the Alliance—a trade association whose members produce biodiesel and renewable diesel—moved to intervene in support of EPA. Although the Alliance filed its motion weeks after Krotz Springs and Parco moved to sever and expedite, the Alliance does not specifically address petitioners' cases, nor does it explain how granting their petitions in particular would injure its members. Instead, it principally (1) asserts that exempting small refineries increases competition and reduces demand for biodiesel and renewable diesel and (2) argues that courts have "routinely" accepted its prior arguments. Mot. 2.

## ARGUMENT

**The Court should deny leave to intervene because the Alliance has not shown that granting the petitions for review would injure its members.**

The Alliance's motion runs aground on Rule 15(d) and decades of circuit precedent. For more than 40 years, this Court has understood the rule's "interest" requirement to call for injury in fact. Unless a would-be intervenor offers specific, concrete evidence that it faces harm from an unfavorable decision, it may not demand the privileges of party status. The Alliance's motion flunks that rule. Nor does the Alliance even try to explain why it could intervene in Case Nos. 25-1187 and 25-1197 if the Court severs and consolidates those cases—defying *Sinclair Wyoming*'s

refinery-specific analysis. The Court should deny the Alliance's motion in full or, at a minimum, as to the petitions in Case Nos. 25-1187 and 25-1197.

## A. Intervenors must show that they would be injured by an unfavorable decision.

Federal Rule of Appellate Procedure 15(d) requires any would-be intervenor to have an "interest" in the case. Fed. R. App. P. 15(d); *accord* Fed. R. Civ. P. 24(a). For more than four decades, this Court has understood that language to require not just "*any* interest the applicant can put forward." *S. Christian Leadership Conf. v. Kelley*, 747 F.2d 777, 779 (D.C. Cir. 1984). Instead, the interest must be a "legally protectable one." *Id*. Before a would-be intervenor can "participat[e] on equal footing with the original parties to a suit," *Bldg. & Const. Trades Dep't v. Reich*, 40 F.3d 1275, 1282 (D.C. Cir. 1994), it must show that it faces "an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical," *Defs. of Wildlife v. Perciasepe*, 714 F.3d 1317, 1323 (D.C. Cir. 2013) (cleaned up).

These safeguards make sense. "A defendant-intervenor does not fit the same mold as the traditional unwilling defendant." *Cal. Steel Indus., Inc. v. United States*, 48 F.4th 1336, 1343 (Fed. Cir. 2022). Instead, it

"actively seeks to participate in the resolution of a case in which the plaintiff did not bring a claim against or request any relief from the proposed intervenor." *Id.* Without such safeguards, anyone "with only a philosophic identification with a defendant—or a concern with a possible unfavorable precedent—could attempt to intervene and influence the course of litigation." *Deutsche Bank Nat'l Tr. Co. v. FDIC*, 717 F.3d 189, 195 (D.C. Cir. 2013) (Silberman, J., concurring). They could raise new arguments, participate in oral argument, and even seek further review of an adverse decision. *Cf. Broidy Cap. Mgmt. LLC v. Muzin*, 61 F.4th 984, 994 (D.C. Cir. 2023) (discussing the "chaos [that] would ensue if courts were required to address the arguments of every nonparty" with views about "ongoing litigation"). Rule 15(d)'s "interest" requirement reserves these rights to entities that truly face injury from "the relief the petitioners seek." *Mil. Toxics Project v. EPA*, 146 F.3d 948, 954 (D.C. Cir. 1998).

## B. The Alliance has not shown that granting the petitions would injure its members.

The Court should deny the Alliance's motion outright because the Alliance hasn't established injury in fact. The Alliance insists that granting the petitions could harm its members by reducing demand for their fuel and increasing competition. Mot. 2, 8–9. But the vague declaration

it offers to support those theories is a textbook example of how *not* to establish injury under *Sinclair Wyoming*.

1. Just last year, this Court told another renewable-fuel trade association that "sparse and conclusory" declarations are "insufficient" to show injury. *Sinclair Wyo.*, 114 F.4th at 722. Yet the declaration the Alliance submitted here is substantively identical to the ones this Court rejected there. The Alliance's declaration should meet the same fate.

In *Sinclair Wyoming*, a renewable-fuel trade association tried to show injury by submitting a pair of declarations from its CEO. *See* Standing Decl., *Sinclair Wyo. Refin. Co. v. EPA*, No. 22-1074 (D.C. Cir. Aug. 28, 2023), Doc. 2014355; Suppl. Standing Decl., *Sinclair Wyo. Refin. Co. v. EPA*, No. 22-1074 (D.C. Cir. Aug. 28, 2023), Doc. 2014358. The declarations offered two theories of harm. First, the CEO stated that the challenged actions would "reduce the future domestic demand for renewable fuel … that [the group's] members produce." *Id.* at Add. 2. That was so (she stated) because (1) the actions would reduce renewable-fuel demand by "about 1.63 billion … gallons" and (2) "[r]oughly three-quarters" of renewable fuel was ethanol, and (3) the group's members produced "about 57%" of the nation's ethanol. *Id.*; *Sinclair* Standing Decl. 3. Second, the

CEO maintained that the challenged actions would "increase the competition … from fossil-fuel producers." *Sinclair* Suppl. Decl. at Add.2.

This Court deemed those declarations too "sparse and conclusory" to show injury. 114 F.4th at 722. As to reduced demand, "market share alone" did not show that the challenged actions would "cause [the group's members] a present or future economic injury." *Id.* The challenged actions offered relief to "only 31 small refineries"—a small fraction of the industry. *Id.* at 723. Nor were the "dynamics of the RIN market … so clear" that the Court could "assume without further information or analysis" that granting that relief would "reduce [future] demand for [the group's] members' renewable fuels." *Id.* at 722–23; *see Summers v. Earth Island Inst.*, 555 U.S. 488, 499 (2009) (explaining that standing "is not an ingenious academic exercise in the conceivable but requires a factual showing of perceptible harm" (cleaned up)). Finally, as to "competitive injuries," the group's threadbare claim was "insufficient." *Id.*

To show what the trade association *could* have offered, the Court drew a "contrast" with the economic modeling put forward by a "similar biofuels coalition" in another recent case. *Sinclair Wyo.*, 114 F.4th at 723 n.15. The petitioners in *Renewable Fuels Association v. EPA* began by

estimating the "total renewable fuel obligations" for the three small re-fineries at issue. 948 F.3d 1206, 1232 (10th Cir. 2020). Their expert then went on to analyze how the challenged actions would impact the "blend rate" and cause "revenue reductions … for [the petitioners'] members." *Id.* Then, he projected what "ethanol prices would have been" without the actions, along with the "annualized impact on … members' revenues." *Id.* at 1233. In short, the petitioners "detailed … how the challenged [actions] caused their injuries," *Producers of Renewables United for Integrity Truth & Transparency v. EPA*, 2022 WL 538185, at *10 (10th Cir. Feb. 23, 2022), by "model[ing] … actual demand for renewable fuels," *Sinclair Wyo.*, 114 F.4th at 723 n.15.

**2.** The Alliance's motion fails to take *Sinclair Wyoming* to heart. Following the same unsuccessful playbook, the Alliance offers two prin-cipal theories of injury here, grounded on a cursory declaration from its vice president. First, the Alliance claims that granting the petitions "would lower demand for biofuels and thereby directly harm [its] mem-bers," Mot. 2, because (1) the Alliance's members produced "over 61 per-cent" of the nation's biomass-based diesel in 2023 and (2) a researcher estimated that small-refinery exemptions "lowered demand for [biomass-

based diesel] by over 900 million gallons in 2018." Mot. Ex. A, ¶¶ 17, 20. Second, the Alliance insists that an unfavorable decision would injure its members by increasing competition from petroleum diesel. Mot. 8–9.

Those arguments do not pass muster under *Sinclair Wyoming*. As that decision explained, "market share alone" is not enough to show that a challenged EPA action "will cause … a present or future economic injury." *Sinclair Wyo.*, 114 F.4th at 722–23. To the contrary, actual "evidence" of injury is essential in renewable-fuel-standard cases, where the complex "dynamics of the RIN market" require "information or analysis" showing how a given exemption would affect the revenues of particular trade-association members. *Id.* The Alliance offers none of that.

Nor do the Alliance's "sparse and conclusory claims about competiti[on]" establish harm. *Id.* Citing *National Biodiesel Board v. EPA*, 843 F.3d 1010 (D.C. Cir. 2016), the Alliance declares that it faced "competitive harm" in an "analogous" renewable-fuel-standard case. Mot. 8. But "past performance is no guarantee of future results." *Sinclair Wyo.*, 114 F.4th at 723. And the differences between the declarations in the two cases demonstrate why. In *National Biodiesel*, the Alliance offered de-

tailed evidence from "marketers and traders" about (1) how much imported biodiesel would flood the U.S. market, (2) which regions of the country it would affect, (3) the capacity of the domestic industry, and (4) the relative "production costs" of foreign and domestic producers. Steckel Decl. ¶¶ 18–23, *Nat'l Biodiesel Bd. v. EPA*, No. 15-1072 (D.C. Cir. Feb. 16, 2016), Doc. 1599002. Here, by contrast, the Alliance simply asserts that petitioners "produce products … that compete with" its members' biomass-based diesel, Mot. 9, and that biomass-based diesel "is typically more expensive than petroleum," Mot. Ex. A, ¶ 16. That is not enough.

## C. The Alliance does not even try to establish injury from granting Krotz Springs' and Parco's petitions.

At a minimum, the Court should deny leave to intervene in Case Nos. 25-1187 and 25-1197 if it severs those cases from the other consolidated cases. Krotz Springs' and Parco's motions to sever and expedite are pending, and petitioners respectfully submit that the Court should decide those motions before deciding the Alliance's motion to intervene. If the Court severs Krotz Springs' and Parco's petitions, it should evaluate the merits of the Alliance's motion to intervene in Cases 25-1187 and 25-1197 without reference to the other consolidated cases.

The Alliance does not even attempt to establish that granting the petitions in those cases would injure its members. *Sinclair Wyoming* made clear that those asserting injury must link their alleged injuries to potential exemptions for the *specific refineries* at issue in the case. The Court emphasized that the case at hand concerned "only 31 small refineries," and that the relevant trade association "ha[d] offered no evidence about how a waiver of RFS obligations for *those refineries* will change the overall market demand for renewable fuels." *Sinclair Wyo.*, 114 F.4th at 723 (emphasis added). The same is true here.

Here, if Case Nos. 25-1187 and 25-1197 are severed and consolidated, then *one* compliance year for only *two* refineries will be at issue—out of 175 exemption requests from 38 refineries resolved in the EPA decisions. If the competitive impact of exemptions for 31 refineries is too difficult to assess without concrete evidence, then the evidentiary bar for demonstrating competitive impact from exempting just *two* refineries in a *single* year is necessarily far higher. Yet the Association doesn't even *assert* injury from potential relief in Case Nos. 25-1187 and 25-1197 specifically, much less quantify threatened effects with the kind of economic evidence this Court endorsed in *Sinclair Wyoming*. How exactly would

exempting Krotz Springs and Parco affect the Alliance's members? The Alliance does not say. It offers no concrete basis to find that the tiny percentage of exempted RINs at issue will have any impact on the overall renewable fuel market, let alone on the subset of that market supplied by the Alliance's members.

The Association has thus forfeited any request to intervene in Case Nos. 25-1187 and 25-1197 in the event of severance. Because the "ordinary rules of forfeiture apply" here, the Association was obligated to make the needed "'evidentiary presentation … no later than when it file[d] its] opening brief.'" *Entergy Arkansas, LLC v. FERC*, 134 F.4th 576, 581 (D.C. Cir. 2025) (citations omitted); *see also City Utils. of Springfield v. EPA*, 2024 WL 4903937, *1 (D.C. Cir. Nov. 1, 2024). Instead, it ignored the severance issue and said nothing about its injury as to those specific petitions. That forfeiture precludes it from intervening in Case Nos. 25-1187 and 25-1197 (at minimum) if the Court severs those cases.

### D. The Alliance's arguments are unsound.

Citing *Military Toxics Project v. EPA*, the Alliance briefly declares itself to be "directly regulated" by the renewable-fuel-standard program, a "quintessential basis" for intervention. Mot. 9. But the analogy doesn't

wash. *Military Toxics Project* involved an EPA rule governing "military munitions" at "firing range[s]." 146 F.3d at 951. The trade association there represented "military firing ranges regulated under" the rule. *Id.* at 954. And the Court found that the ranges "would suffer concrete injury"—the loss of an "exemption"—if the petitioners prevailed. *Id.* That's the opposite of the situation here. The Renewable Fuel Standard imposes obligations on refineries, not the renewable-fuel industry. And it's Krotz Springs and Parco, not the Alliance and its members, that are fighting for a regulatory exemption. In short, unlike the firing ranges in *Military Toxics Project*, the renewable-fuel producers here can pursue business as usual, no matter what happens in Krotz Springs' and Parco's cases.

The Alliance also suggests that the Court should grant it party status because it has "routinely been granted leave to intervene" in other renewable-fuel-standard cases. Mot. 2 n.1. But again, "past performance is no guarantee of future results." *Sinclair Wyo.*, 114 F.4th at 723. Most of the intervention orders that the Alliance cites were decided without adversarial briefing, and none analyzes the injury question. *Cf. Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 91 (1998) ("[D]rive-by jurisdic-

tional rulings … have no precedential effect."). And all were decided before *Sinclair Wyoming* clarified that "[t]he dynamics of the RIN market" call for "further information or analysis." 114 F.4th at 722–23.

### E. The Court should decline the Alliance's invitation to overturn its longstanding injury rule.

Hemmed in by circuit precedent, the Alliance makes one last effort to break free. It begins (at 8) by suggesting that the requirement that intervenors to show injury is no longer "good law." But the only case it cites, *Virginia House of Delegates v. Bethune-Hill*, 587 U.S. 658 (2019), neither analyzed the standards for intervention nor considered whether Rule 15(d)'s "interest" requirement demands injury in fact. Regardless, this Court confirmed just three months ago that its longstanding approach to intervention remains binding circuit precedent. *IGas Holdings, Inc. v. EPA*, 146 F.4th 1126, 1135 n.2 (D.C. Cir. 2025).

Changing tack, the Alliance asks the Court to overrule its precedent through "the *Irons* procedure." Mot. 8; *see Irons v. Diamond*, 670 F.2d 265, 267–68 & n.11 (D.C. Cir. 1981). Yet even apart from the injury rule's soundness, this case is an especially poor candidate for *Irons*.

To begin with, the Alliance cites no case—and we have found none—where the Court used *Irons* to topple a precedent as deeply rooted

as the injury rule. *Irons* is a "nonadversarial … procedure," Douglas H. Ginsburg & Donald Falk, *The Court En Banc: 1981–1990*, 59 Geo. Wash. L. Rev. 1008, 1040 (1991), that is typically used for "minor or marginal issue[s]." *Nat'l Ass'n for Surface Finishing v. EPA*, 795 F.3d 1, 8 n.4 (D.C. Cir. 2015). But the injury rule is neither. It has been the law for more than forty years, and nearly every member of the current Court has written or joined opinions applying it. *See* Addendum. Nor does the Alliance "describe how [it] would replace the many precedents [it] would disregar[d]." *Mowrer v. Dep't of Transp.*, 14 F.4th 723, 749 (D.C. Cir. 2021) (Randolph, J., concurring in part and concurring in the judgment) (citation modified). The Court should not reconsider a rule that well established (or leave so large a vacuum) without the "benefit of briefing or argument." *In re Sealed Case No. 97-3112*, 181 F.3d 128, 146 n.5 (D.C. Cir. 1999) (Henderson, J., concurring).

Nor is this the time to revisit the Court's intervention standards. The Advisory Committee on Appellate Rules—the "body whose charge it is to review issues of precisely this sort," *Winters v. Taskila*, 88 F.4th 665, 672 (6th Cir. 2023)—is developing a "new Federal Rule of Appellate Procedure governing intervention." U.S. Courts, *Report of the Appellate*

*Rules Advisory Committee* 227 (Oct. 15, 2025), bit.ly/Rules_Committee. While it does, judicial economy and deference to the rulemaking process counsel against en banc review. *See generally Mohawk Indus., Inc. v. Carpenter*, 558 U.S. 100, 113 (2009) ("[R]ulemaking," not "court decision," is "the preferred means" for resolving difficult procedural questions.).

## CONCLUSION

The Court should deny the motion to intervene.

Dated: October 31, 2025

*/s/ Allyson N. Ho*
Allyson N. Ho
   *Counsel of Record*
Stephen J. Hammer
Robert W. Frey
GIBSON, DUNN & CRUTCHER LLP
2001 Ross Avenue, Suite 2100
Dallas, TX 75201
(214) 698-3100
aho@gibsondunn.com

Lavi M. Ben Dor
M. Christian Talley
GIBSON, DUNN & CRUTCHER LLP
1700 M Street, NW
Washington, DC 20036
(202) 955-8500

*Counsel for Petitioners*
*in No. 25-1197*

Respectfully submitted,

*/s/ Daniel J. Feith*
Daniel J. Feith
   *Counsel of Record*
Peter C. Whitfield
Peter A. Bruland
Cody M. Akins
SIDLEY AUSTIN LLP
1501 K Street, NW
Washington, DC 20005
(202) 736-8000
dfeith@sidley.com

*Counsel for Petitioner*
*in No. 25-1187*

**CERTIFICATE OF COMPLIANCE**

This response complies with Federal Rule of Appellate Procedure 27(d)(1)(E) because it has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point Century Schoolbook font. The response complies with Federal Rule of Appellate Procedure 27(d)(2) because it contains 3,966 words, including the Addendum, but excluding the sections listed in Rule 32(f).

*/s/ Daniel J. Feith*

**CERTIFICATE OF SERVICE**

I certify that on October 31, 2025, I electronically filed this document with the Clerk of the Court using the CM/ECF System, which will send notice to all registered CM/ECF users.

*/s/ Daniel J. Feith*

# ADDENDUM

Contra the Alliance (at 8), "overturn[ing]" this Court's injury requirement through the "*Irons* procedure" would be particularly inappropriate when nearly every sitting Member of this Court has written or joined opinions applying that rule:

- *IGas Holdings, Inc. v. EPA*, 146 F.4th 1126, 1135 n.2 (D.C. Cir. 2025) (Pan, J., joined by Pillard and Garcia, JJ.).

- *Am. Whitewater v. FERC*, 125 F.4th 1139, 1151 (D.C. Cir. 2025) (Henderson, J., joined by Pan and Edwards, JJ.).

- *City Utils. of Springfield v. EPA*, 2024 WL 4903937, *1 (D.C. Cir. Nov. 1, 2024) (per curiam by Henderson, Pillard, and Walker, JJ).

- *Yocha Dehe v. U.S. Dep't of the Interior*, 3 F.4th 427, 431 (D.C. Cir. 2021) (Rogers, J., joined by Henderson and Sentelle, JJ.).

- *Old Dominion Electric Cooperative v. FERC*, 892 F.3d 1223, 1233 (D.C. Cir. 2018) (Millett, J., joined by Tatel and Griffith, JJ.).

- *NRDC v. EPA*, 896 F.3d 459, 462–63 (D.C. Cir. 2018) (Griffith, J., joined by Katsas and Edwards, JJ.).

- *U.S. House of Representatives v. Price*, 2017 WL 3271445, at *1 (D.C. Cir. Aug. 1, 2017) (per curiam by Millett, Pillard, and Wilkins, JJ.).

- *Env't Integrity Project v. Pruitt*, 709 F. App'x 12, 13 (D.C. Cir. 2017) (per curiam by Kavanaugh, Srinivasan, and Pillard, JJ.).

- *Crossroads Grassroots Pol'y Strategies v. FEC*, 788 F.3d 312, 316 (D.C. Cir. 2015) (Brown, J., joined by Rogers and Ginsburg, JJ.).