No. 25-1180 & consolidated cases

# In the United States Court of Appeals for the District of Columbia Circuit

---

REH COMPANY, LLC,

*Petitioner*,

v.

ENVIRONMENTAL PROTECTION AGENCY,

*Respondent.*

---

On Petition for Review of a Final Decision of the Environmental Protection Agency, 90 Fed. Reg. 41,829 (Aug. 27, 2025)

---

**JOINT RESPONSE IN OPPOSITION TO COALITION FOR RENEWABLE NATURAL GAS AND SUSTAINABLE ADVANCED BIOFUEL REFINERS COALITION'S MOTION TO INTERVENE**

---

Daniel J. Feith
   *Counsel of Record*
Peter C. Whitfield
Peter A. Bruland
Cody M. Akins
SIDLEY AUSTIN LLP
1501 K Street, NW
Washington, D.C. 20005
(202) 736-8000
dfeith@sidley.com

*Counsel for Petitioner
in No. 25-1230*

Allyson N. Ho
   *Counsel of Record*
Stephen J. Hammer
Robert W. Frey
GIBSON, DUNN & CRUTCHER LLP
2001 Ross Avenue, Suite 2100
Dallas, Texas 75201
(214) 698-3100
aho@gibsondunn.com

*Counsel for Petitioners
in No. 25-1208*

(*additional counsel listed on inside cover*)

Christine M. Buzzard
Lavi M. Ben Dor
M. Christian Talley
GIBSON, DUNN & CRUTCHER LLP
1700 M Street, NW
Washington, D.C. 20036
(202) 955-8500

*Counsel for Petitioners
in No. 25-1208*

## INTRODUCTION

The Coalition for Renewable Natural Gas and the Sustainable Advanced Biofuel Refiners Coalition seek to intervene in this proceeding without demonstrating any injury connected to the relief petitioners seek. But would-be intervenors must demonstrate their "interest" in the case, Fed. R. App. P. 15(d), which "refers not to *any* interest the applicant can put forward, but only to a legally protectable one" equivalent to the injury required for Article III standing. *S. Christian Leadership Conf., (SCLC) v. Kelley*, 747 F.2d 777, 779 (D.C. Cir. 1984). Without any cognizable injury, the Coalitions' bid to intervene stalls at the starting line.

On the Coalitions' theory of injury, if small refineries receive exemptions from their obligations under the Renewable Fuel Standard, demand for renewable fuel will fall, harming the producers the Coalitions represent. But this Court just last year rejected that theory as advancing "sparse and conclusory claims about competitive injuries." *Sinclair Wyo. Refin. Co. v. EPA*, 114 F.4th 693, 722 (D.C. Cir. 2024). The Coalitions commit the same error, failing to produce specific evidence to demonstrate how relief for the refineries here would affect the renewable fuel

1

market or increase competition. The motion to intervene should be denied.

## BACKGROUND

### I. Legal Background

This case concerns the Renewable Fuel Standard, which "requires most domestic [oil] refineries to blend a certain amount of ethanol and other renewable fuels into the transportation fuels they produce." *HollyFrontier Cheyenne Refin., LLC v. Renewable Fuels Ass'n*, 594 U.S. 382, 385 (2021); *see* 42 U.S.C. § 7545(o)(2)(A). Congress set the annual required volumes of renewable fuels up through 2022, 42 U.S.C. § 7545(o)(2)(B)(i), and tasked EPA with setting the volumes for subsequent years, *id.* § 7545(o)(2)(B)(ii); *see, e.g.*, 90 Fed. Reg. 25,784 (June 17, 2025) (proposing volumes and percentage standards for 2026 and 2027); 88 Fed. Reg. 44,468 (July 12, 2023) (setting levels for 2023 through 2025).

To implement those requirements, EPA set up "a market-based program through which parties can purchase and trade" renewable fuel credits, called "Renewable Identification Numbers" or "RINs." *Wynnewood Refin. Co. v. EPA*, 77 F.4th 767, 774 (D.C. Cir. 2023); *see* 42 U.S.C.

§ 7545(o)(5).  RINs are generated when renewable fuel is produced or imported.  40 C.F.R. § 80.1426(a).  "When the renewable fuel is blended with conventional transportation fuel (*e.g.*, gasoline or diesel), the RINs are 'separated' from their assigned batch" of renewable fuel and become usable.  *Sinclair Wyo. Refin. Co.*, 114 F.4th at 701 (citation omitted); *see* 40 C.F.R. §§ 80.1426(e), 80.1429(b).

A refinery must "retire" enough RINs (*i.e.*, submit them to EPA) to meet its obligations under the program.  40 C.F.R. § 80.1427(a)(1).  It can obtain the necessary RINs by either blending renewable fuels itself or purchasing RINs from others.  *Wynnewood Refin. Co.*, 77 F.4th at 774.  In this way, RINs "serve as the currency of the [Renewable Fuel Standard] Program," because refineries often rely on purchased RINs to help satisfy their obligations.  *Id.*

A RIN lasts for a limited duration.  It remains "valid to show compliance" only for "12 months" after it is generated.  42 U.S.C. § 7545(o)(5)(C).  EPA regulations permit using a RIN to establish compliance for the calendar year in which it was generated or the following calendar year; for subsequent years, the RIN becomes "invalid."  40 C.F.R. §§ 80.1427(a)(6), 80.1428(c).

3

"[C]oncerned" that the Renewable Fuel Standard's "escalating . . . obligations could work special burdens on small refineries," Congress established a scheme to exempt those refineries from those obligations. *HollyFrontier*, 594 U.S. at 386–87. A refinery can petition EPA "at any time" for an exemption from the Renewable Fuel Standard "for the reason of disproportionate economic hardship." 42 U.S.C. § 7545(o)(9)(B)(i). A "small refinery" eligible for this exemption is one "for which the average aggregate daily crude oil throughput for a calendar year . . . does not exceed 75,000 barrels." *Id.* § 7545(o)(1)(K).

## II. Factual and Procedural Background

In August 2025, EPA decided 175 small-refinery-exemption petitions. *See Notice of August 2025 Decisions on Petitions for Small Refinery Exemptions Under the Renewable Fuel Standard Program*, 90 Fed. Reg. 41,829 (Aug. 27, 2025). Since then, 41 petitions for review have been filed in this Court challenging EPA's decisions. *See REH Co. v. EPA*, No. 25-1180 (listing consolidated cases); *Alon Refin. Krotz Springs, Inc. v. EPA*, No. 25-1187 (two additional consolidated cases, which the Court severed from this proceeding).

4

Although many of the petitions are likely to raise issues common to many refineries, the exact scope of the proceedings here remains to be seen. Many petitioners haven't yet filed their nonbinding statements of issues, so the legal challenges to be raised and the relief sought remain uncertain.

On October 29, the Coalitions—the Coalition for Renewable Natural Gas (CRNG), a trade association "represent[ing] the renewable natural gas industry," and Sustainable Advanced Biofuel Refiners Coalition (SABR), a trade association "represent[ing] the biodiesel industry"—moved to intervene in support of EPA. Mot. 2. To justify their participation here, the Coalitions principally assert that (1) exempting small refineries generally reduces demand for renewable fuels and for the RINs generated when those fuels are produced, and (2) courts have "routinely" permitted "biofuels producers" and "stakeholders" to intervene in other cases. Mot. 12–13.

On November 19, the Court issued an order severing, consolidating, and expediting the petitions in Case Nos. 25-1187 and 25-1197, which involve the same petitioners here, although seeking review of exemption petitions for different compliance years. Doc. #2146228 at 2. The Court

5

also gave until November 26 to respond to the Coalitions' intervention motion. *Id.* at 2–3.

## ARGUMENT

**I.     The Court should deny leave to intervene because the Coalitions haven't demonstrated that granting the petitions for review would injure their members.**

The Coalitions' motion to intervene should be denied because they lack a sufficient interest in these cases to justify intervention for two independent reasons. First, while the Coalitions assert standing on behalf of their members, they fail to identify any particular member who will be injured if the petitioners here receive relief. And second, the declarations the Coalitions submit to substantiate their purported injuries commit the same errors deemed fatal in *Sinclair Wyoming Refining Co. LLC v. EPA*, where this Court made clear that intervenors must demonstrate injury in fact through specific, concrete evidence. 114 F.4th at 722–23. Because the Coalitions don't provide concrete evidence connecting any purported injury to the refineries at issue here, their members face no prospect of injury from the relief petitioners seek.

6

### A. Intervenors must show that they would be injured by an unfavorable decision.

Federal Rule of Appellate Procedure 15(d) provides that an entity seeking to intervene as a party must establish its "interest" in the litigation. Fed. R. App. 15(d). For decades, this Court has made clear that not just "*any* interest the applicant can put forward" will suffice. *S. Christian Leadership Conf., (SCLC)*, 747 F.2d at 779. Rather, "only . . . a legally protectable" interest equivalent to the injury required for Article III standing will suffice. *Id.*; *accord Mova Pharm. Corp. v. Shalala*, 140 F.3d 1060, 1074 (D.C. Cir. 1998) ("[A] party that seeks to intervene as of right must demonstrate that it has standing to participate in the action."); *IGAS Holdings, Inc. v. EPA*, 146 F.4th 1126, 1135 n.2 (D.C. Cir. 2025).

The Coalitions recognize, as they must, that circuit precedent requires them to show the injury required for constitutional standing. Mot. 10 (citing *Fund For Animals, Inc. v. Norton*, 322 F.3d 728, 735 (D.C. Cir. 2003)). They primarily argue that they satisfy this requirement because (1) exemptions for small refineries will reduce demand for renewable fuel and increase competition, and (2) this Court has frequently permitted intervention by similar interest groups in exemption-related litigation in the past. Both arguments lack merit.

7

### B. The Coalitions haven't shown that granting the petitions would injure their members.

The Coalitions haven't established a cognizable injury for two independent reasons. First, while the Coalitions assert that they've established the injury necessary for intervention through associational standing principles, they fail to identify any particular member that would suffer injury if petitioners receive exemptions. Second, the Coalitions' general declarations regarding the renewable fuel market fail the *Sinclair Wyoming* test requiring specific evidence analyzing the market impact of potential exemptions. Both deficiencies foreclose intervention.

*First*, the Coalitions assert that "their members produce fuels eligible to meet the volume requirements under the Renewable Fuel Standard program," Mot. 10, but don't identify *which* members risk injury if petitioners obtain relief. Instead, the Coalitions broadly refer to "Movants' members" and "members of Movants" without further detail. *See, e.g.*, Mot. 11, 12, 13. The Coalitions' declarations don't zero in on any particular member that will suffer injury, either.

This oversight is fatal to the Coalitions' case for associational standing. "[W]hen a petitioner claims associational standing, it is not enough

8

to aver that unidentified members have been injured. Rather, the petitioner must specifically identify members who have suffered the requisite harm." *Sorenson Commc'ns, LLC v. FCC*, 897 F.3d 214, 224 (D.C. Cir. 2018) (quoting *Chamber of Com. of the U.S. v. EPA*, 642 F.3d 192, 199–200 (D.C. Cir. 2011)). Because the Coalitions "neither argued nor directed the Court to evidence that any of their specific members has suffered a 'concrete and particularized' harm that is 'actual or imminent,'" they "failed to meet this burden." *Am. Chem. Council v. Dep't of Transp.*, 468 F.3d 810, 819 (D.C. Cir. 2006) (citation omitted). The Coalitions' generic references to their membership at large don't suffice.

The Coalitions try to evade these precedents by insisting their standing is "self-evident." Mot. 10 (quoting *Sierra Club v. EPA*, 292 F.3d 895, 900 (D.C. Cir. 2002)). But *Sierra Club* cuts *against* the Coalitions. There, the Court explained that when the party seeking review is "an object of the [agency's] action," its "standing to seek review of [the] administrative action is self-evident," so the party doesn't need to introduce "evidence outside the administrative record" to prove its standing. *Sierra Club*, 292 F.3d at 899–900.

9

That rule doesn't hold for entities (like the Coalitions) that aren't the direct object of agency action—those entities "must supplement the record to the extent necessary to explain and substantiate [their] entitlement to judicial review." *Id.* at 900. This Court has consistently held that associations lack standing to seek review of agency action that doesn't directly determine their rights or obligations when they "fail[] to demonstrate a substantial probability of injury to a single member." *Id.* at 902; *accord Sorenson Commc'ns, LLC*, 897 F.3d at 225 (association didn't comply with *Sierra Club* when it "failed to identify any of its members or the harm they suffered").

*Second*, the Coalitions' declarations don't come close to discharging their evidentiary burden under *Sinclair Wyoming*. The Court held there that would-be intervenors can't simply gesture to their market share of the renewable fuel market, claim that challenges to EPA's actions will reduce demand for renewables, and then ask the Court to infer an injury. *Sinclair Wyoming*, 114 F.4th at 722. Instead, would-be intervenors must show that "a reduction in overall market demand is 'certainly impending'" because of petitioners' challenges as "[t]he dynamics of the RIN market are not so clear that [the Court] can assume" that EPA's grant of

10

exemptions for past compliance years will reduce current or future demand for renewable fuels. *Id.*

Both declarations here contain the same conclusory generalities that *Sinclair Wyoming* held patently insufficient. CRNG's declaration from Geoffrey Dietz, its Senior Director of Federal Government Affairs, never quantifies the harm CRNG's members purportedly face from the challenges petitioners raise. Dietz provides no anticipated price drop for RINs, no expected reduction in renewable-fuel demand, and no dollar figure on the potential loss for CRNG's members.

Instead, Dietz relies on generic assertions that CRNG's members make "business decisions" based on the Renewable Fuel Standard, *see* Dietz Dec. ¶ 8, and that its members have previously claimed that exemptions are linked to reduced RIN demand, *id.* ¶¶ 10–11. The only place Dietz attempts to quantify concrete harm to CRNG's members is in the number of new RINs that would be generated if EPA's "determination not to grant new RINs to replace expired RINs is overturned." *See id.* ¶ 12. But even there, Dietz fails to take the necessary next step and explain how the "dynamics of the RIN market" will translate EPA's relief

11

for a handful of refineries into concrete harm to CRNG's members. *See Sinclair Wyoming*, 114 F.4th at 722.

The declaration of Joseph Jobe, SABR's Chief Executive Officer, is similarly deficient. Jobe asserts that the Renewable Fuel Standard's requirements "impact[] demand for biomass-based diesel" and that "previous[]" exemptions have affected SABR's members, *see* Jobe Dec. ¶¶ 9, 11—the precise type of generic and conclusory claims *Sinclair Wyoming* held legally insufficient, s*ee* 114 F.4th at 722. Jobe's sole attempt to provide concrete evidence of harm is his assertion about the number of "new RINs [that] would be introduced into the market" if this Court overturns EPA's "determination not to grant new RINs to replace expired RINs." *Id.* ¶ 12. Like Dietz, however, Jobe never demonstrates any specific impact on SABR's members.

The Coalitions' failure to specify which of their members will suffer injury or to identify specific evidence supporting the predicted injury sink their intervention request twice over.

## II. The Coalitions' counterarguments are meritless.

Both of the Coalitions' fallback arguments are foreclosed by circuit precedent.

12

*First*, the Coalitions assert that they necessarily have standing because other associations representing the interests of renewable-fuel producers have successfully intervened in past refinery-centered litigation. *See* Mot. 10, 13. But the fact that "[i]ntervention has also been granted to biofuel stakeholders in [other] challenges," *see id.* at 13, says nothing about whether the Coalitions have standing here. After all, when it comes to establishing injury, "past performance is no guarantee of future results." *Sinclair Wyo. Refin. Co.*, 114 F.4th at 723. Notably, the cases the Coalitions cite all predate *Sinclair Wyoming*, so they couldn't have applied its evidentiary standard. *See* Mot. 10, 13.

*Second*, the Coalitions argue that their members will suffer "competitive harms" if petitioners' challenges succeed. Mot. 13–14. Again, that argument runs headfirst into *Sinclair Wyoming*, which rejected standing based on "sparse and conclusory claims about competitive injuries." 114 F.4th at 722. The Coalitions haven't demonstrated that any relief this Court grants to the refineries here will affect market conditions or the competition the Coalitions' members face. That lack of evidence is fatal to the Coalitions' request for intervention.

13

## Conclusion

The Court should deny the Coalitions' motion to intervene.

Dated: November 26, 2025

Respectfully submitted,

/s/ *Daniel J. Feith*
Daniel J. Feith
   *Counsel of Record*
Peter C. Whitfield
Peter A. Bruland
Cody M. Akins
SIDLEY AUSTIN LLP
1501 K Street, NW
Washington, D.C. 20005
(202) 736-8000
dfeith@sidley.com

*Counsel for Petitioner
in No. 25-1230*

/s/ *Allyson N. Ho*
Allyson N. Ho
   *Counsel of Record*
Stephen J. Hammer
Robert W. Frey
GIBSON, DUNN & CRUTCHER LLP
2001 Ross Avenue, Suite 2100
Dallas, Texas 75201
(214) 698-3100
aho@gibsondunn.com

Christine M. Buzzard
Lavi M. Ben Dor
M. Christian Talley
GIBSON, DUNN & CRUTCHER LLP
1700 M Street, NW
Washington, D.C. 20036
(202) 955-8500

*Counsel for Petitioners
in No. 25-1208*

## CERTIFICATE OF COMPLIANCE

Pursuant to Federal Rule of Appellate Procedure 32(g)(1), the undersigned certifies that this response complies with the applicable typeface, type style, and type-volume limitations. This response was prepared using a proportionally spaced type (New Century Schoolbook, 14 point). Exclusive of the portions exempted by Federal Rule of Appellate Procedure 32(f) and D.C. Circuit Rule 32(e)(1), this response contains 2,417 words. This certificate was prepared in reliance on the word-count function of the word-processing system used to prepare this response.

November 26, 2025                                   Respectfully submitted,

                                                                           */s/ Allyson N. Ho*
Allyson N. Ho
GIBSON, DUNN & CRUTCHER LLP
2001 Ross Avenue, Suite 2100
Dallas, Texas 75201
(214) 698-3100
aho@gibsondunn.com

## CERTIFICATE OF SERVICE

I hereby certify that, on November 26, 2025, I electronically filed the foregoing document with the Clerk for the United States Court of Appeals for the District of Columbia Circuit using the appellate CM/ECF system. Notice of this filing will be sent to all counsel of record by operation of the Court's electronic filing system.

November 26, 2025

Respectfully submitted,

/s/ Allyson N. Ho
Allyson N. Ho
GIBSON, DUNN & CRUTCHER LLP
2001 Ross Avenue, Suite 2100
Dallas, Texas 75201
(214) 698-3100
aho@gibsondunn.com