NOT YET SCHEDULED FOR ORAL ARGUMENT

UNITED STATES COURT OF APPEALS
FOR THE DISTRICT OF COLUMBIA CIRCUIT

|  |  |  |
|---|---|---|
| REH COMPANY, LLC, | ) ) ) ) ) ) ) ) ) ) ) ) ) ) | |
| *Petitioner,* | | |
| v. | | No. 25-1180 (and Consolidated cases) |
| UNITED STATES ENVIRONMENTAL PROTECTION AGENCY, | | |
| *Respondent.* | | |

**REPLY IN SUPPORT OF MOTION OF COALITION FOR RENEWABLE NATURAL GAS AND SUSTAINABLE ADVANCED BIOFUEL REFINERS COALITION FOR LEAVE TO INTERVENE**

On November 19, 2025, this Court deferred all motions to intervene to the merits panel for the above-referenced consolidated cases (Doc. #2146228 at 2). The Court also provided an extension of time to file responses to the intervention motion of the Coalition for Renewable Natural Gas ("RNG COALITION") and the Sustainable Advanced Biofuel Refiners Coalition ("SABR") in Case Nos. 25-1187 and 25-1197, which were severed as they claim to raise distinct issues. The opposition filed by Petitioners in Case Nos. 25-1230 and 25-1208 on November 26, 2025 (Doc. #2147573) is not properly before this Court. While these are the same petitioners as in Case Nos. 25-1187 and 25-1197, they are attempting to avoid their

failure to timely file oppositions to intervention regarding the issues raised in the remaining consolidated cases.[1] Even if properly before the Court, the Alon and Parco Refiners continue to misstate the law and misrepresent the facts.

I.  **Biofuel Producers—the Objects of the Renewable Fuel Standard—Have Legally Protectable Interests in Ensuring the Program's Proper Implementation.**

The Alon and Parco Refiners attempt to claim that biofuel producers have no "legally protectable" interest in ensuring proper implementation of small refinery exemptions under the Renewable Fuel Standard. They ignore that the purpose of the program is to promote the production of renewable fuels. *Ams. for Clean Energy v. EPA*, 864 F.3d 691, 697 (D.C. Cir. 2017). This Court's routine granting of intervention to biofuel producers in cases regarding the implementation of the Renewable Fuel Standard establishes that the interests of biofuel producers are legally protectable interests. This stands in stark contrast to the legislator who sought to intervene to pursue an appeal not sought by the existing parties in furtherance of his legislative duties in *Southern Christian Leadership Conference v. Kelly*, 747 F.2d 777, 779 (D.C. Cir. 1984), cited in Opp'n at 1 (Doc. #2147573). Unlike that case, here biofuel producers are intervening to defend agency action that seeks to avoid undermining a program aimed at supporting increased biofuel production.

---

[1] These Petitioners are Alon Refining Krotz Springs Inc. (Case No. 25-1230) and HF Sinclair Refining & Marketing LLC and HF Sinclair Parco Refining LLC (Case No. 25-1208) (collectively referred to as the "Alon and Parco Refiners").

2

The undermining of incentives Congress created to promote biofuel production, as occurs when EPA improperly implements small refinery exemptions, is precisely the type of legally protectable interest this Court has found sufficient in cases dealing with the Renewable Fuel Standard. RNG COALITION and SABR do not simply assert "any interest," they have shown how the relief being requested by refiner petitioners in this case, including the Alon and Parco Refiners, would adversely impact the "legally protectable" interests of its members. Indeed, the Alon and Parco Refiners do not dispute the evidence presented by movant-intervenors that retroactively granted small refinery exemptions and an oversupply of Renewable Identification Numbers ("RINs") can and do have impacts on renewable fuel demand and the RIN market, which adversely affect renewable fuel producers that generate RINs and compete with petroleum refiners.

First, RNG COALITION and SABR clearly identified the relief being requested by refiner petitioners in this matter—additional return of RINs or revival of RINs that have been expired to still be able to be used for compliance—and provided findings by EPA and economists that acknowledge that allowing such RINs back into the market would negatively impact renewable fuel producers. Mot. to Intervene at 2-3, 6-9, 12, Dietz Decl. ¶¶11-12, Jobe Decl. ¶¶9-13 (Doc. #2142907). The Alon and Parco Refiners attempt to obfuscate this fact by asserting "the exact scope of the proceedings here remains to be seen," noting that "[m]any

petitioners haven't yet filed their nonbinding statements of issues." Opp'n at 5 (Doc. #2147573). Yet, the Alon and Parco Refiners had both already filed their statement of issues that indicate they seek additional relief from EPA with respect to the retroactive exemptions they received. *See* Statement of Issues, No. 25-1230 (Doc. #2147447); Statement of Issues, No. 25-1208 (Doc. #2146126).[2] Nowhere do they dispute that refiner petitioners seek to overturn a determination made by EPA regarding only returning expired RINs that may have been already retired with respect to newly granted exemptions for compliance years prior to 2024. If this determination is overturned, EPA has estimated that over 3 billion RINs could return to the marketplace to be used for compliance, which would have a detrimental impact on biofuel producers. Mot. to Intervene at 11 (Doc. #2142907).

The Alon and Parco Refiners then erroneously claim RNG COALITION and SABR have not identified any "particular member that would suffer injury." Opp'n at 8 (Doc. #2147573). Both declarations submitted referenced testimony by members of each trade association as to the harms that they have experienced because of retroactive small refinery exemptions and the potential oversupply of RINs. Dietz Decl. ¶¶9-10; Jobe Decl. ¶¶10-11. Further, the Alon and Parco Refiners ignore that the RNG COALITION represents virtually all cellulosic biofuel RIN

---

[2] Based on the statement of issues that have now been filed, numerous other refiner petitioners raise similar issues.

4

generators. Mot. to Intervene at 16 (Doc. #2142907). They also have taken no issue with the conclusion of economists that biodiesel producers are those most adversely affected by small refinery exemptions. Jobe Decl. ¶11. As this Court has found, for purposes of standing, "there is no need to identify injured members when 'all the members of the organization are affected by the challenged activity.'" *Alon Ref. Krotz Springs, Inc. v. EPA*, 936 F.3d 628, 665 (D.C. Cir. 2019).

Ignoring cases more directly on point, the Alon and Parco Refiners cite to *Sorenson Commc'ns, LLC v. FCC*, 897 F.3d 214, 225 (D.C. Cir. 2018), where this Court found the claimed standing of a membership organization "presented multiple, interrelated difficulties that it entirely failed to address."[3] Unlike that case where the Court declined to find standing was "self-evident," it is, in fact, self-evident that an association representing the interests of renewable natural gas—a cellulosic biofuel—and biodiesel—biomass-based diesel—would have standing with respect to challenges on the implementation of a program intended to promote both those fuels. *See Energy Future Coal. v. EPA*, 793 F.3d 141, 144 (D.C. Cir. 2015) (finding industry whose products are prohibited or impeded from being used by agency action directed at other party is "an object of the action (or forgone action) at issue" so

---

[3] In *Sorenson Commc'ns, LLC*, 897 F.3d at 226, this Court found another petitioner had competitor standing. Similarly, here, a decision favorable to refiner petitioners can result in their having additional RINs that can be sold into the RIN market in which members of RNG COALITION and SABR compete.

5

"there is ordinarily little question" that they have standing) (citations omitted). Here, overturning the agency's determinations would require less renewable fuel be used. Because of these impacts, biofuel producers that produce the fuel and generate the required RINs are the direct "objects of the action (or forgone action) at issue."

II.  **The Alon and Parco Refiners Attempt to Impose a New Standard for Intervention as Respondents that is Not Supported by Precedent Must be Rejected.**

In addition to mispresenting the circumstances of these consolidated cases, the Alon and Parco Refiners misstate the law on intervention and standing in an attempt to impose a higher standard on biofuel producers seeking to intervene to support EPA than is or has ever been required.

As an initial matter, contrary to the Alon and Parco Refiners' claim (Opp'n at 7, Doc. #2147573), RNG COALITION and SABR do not assert that standing is required to be allowed to intervene as a respondent. Rather, they assert that, if standing can be shown, this Court has found that meets the interest requirement for purposes of intervention. Mot. to Intervene at 9-10 (Doc. #2142907). While citing to a footnote in *IGAS Holdings, Inc. v. EPA*, 146 F.4th 1126, 1135 n.2 (D.C. Cir. 2025), to contend this Court requires an intervenor to show standing, even as a respondent, the Alon and Parco Refiners ignore another panel's reference to *Supreme Court* precedent finding "intervenors that seek the same relief sought by at least one existing party need not do so." *Institutional Shareholder Services v. SEC*,

6

142 F.4th 757, 764 n.3 (D.C. Cir. 2025) (citing *Little Sisters of the Poor Saints Peter & Paul Home v. Pennsylvania*, 591 U.S. 657, 674 n.6 (2020)). RNG COALITION and SABR seek to defend EPA's determination that it may return "expired" RINs with respect to exemptions granted prior to 2024 and that such RINs cannot be used to show compliance in later years.

Even if standing is required, these Petitioners did not argue that Growth Energy, Renewable Fuels Association, or Clean Fuels Alliance America did not have standing to defend EPA's determination with respect to the claims raised in Case Nos. 25-1208 and 25-1230. Instead, those Petitioners claimed that they could not show standing with respect to the limited issues raised in Case Nos. 25-1187 and 25-1197. While we believe the showing of standing was sufficient for those cases as well, standing of only one entity is typically required, and the opposition filed here provides no explanation why only RNG COALITION and SABR should not be allowed to intervene. *Growth Energy v. EPA*, 5 F.4th 1, 26 (D.C. Cir. 2021) ("When, as here, multiple organizations bring suit, the court 'need only find one party with standing' to reach the merits.") (citations omitted). Indeed, this is why the Supreme Court does not require standing when the proposed intervenors seek the same relief as the government that clearly has standing. *Little Sisters of the Poor Saints Peter & Paul Home*, 591 U.S. at 674 n.6

Regardless, RNG COALITION and SABR have shown that they meet the requirements for standing. Here, the Alon and Parco Refiners attempt to impose a heightened standard on biofuel producers seeking intervention, citing *Sinclair Wyoming Refining Co. v. EPA*, 114 F.4th 693 (D.C. Cir. 2024) ("*Sinclair*"). That case, however, is inapposite and nowhere imposes the evidentiary requirement that the Alon and Parco Refiners seek to impose here.

First, the Alon and Parco Refiners ignore the differences between the challenged agency action in *Sinclair* and the relief requested here. In that case, a trade association representing ethanol producers sought to challenge EPA's decision not to require small refiners to retire RINs to meet reinstated 2018 volume requirements several years after the compliance deadline had passed. Unlike the other, numerous cases allowing participation of biofuel producers in Renewable Fuel Standard cases, the Court there found the "dynamics of the RIN market are not so clear that we can assume without further information or analysis that waiving some RIN obligations for 2018 will reduce 2024 demand for Growth Energy's members' renewable fuels." *Sinclair*, 114 F.4th at 722-23. This stands in stark contrast to refiners seeking additional relief, such as reviving expired RINs so that they can be used for compliance in current or future years, as is the case here. In other words, the relief requested here, unlike the action being challenged in *Sinclair*, would directly impact current and future volume requirements.

8

These direct impacts have not been disputed by the Alon or Parco Refiners. Nor can they, as the RIN dynamics here are clear. As explained by all movant-intervenors, the number of RINs that could be added to the market if EPA's decision is reversed is significant.[4] As noted above, EPA and economists have already acknowledged the negative impacts this would have on biofuel producers that generate RINs. *See New Jersey v. EPA*, 989 F.3d 1038, 1048 (D.C. Cir. 2021) ("A permissible theory of standing … relies instead on the predictable effect of Government action on the decisions of third parties.'") (citations omitted). There is no missing link here, and the effects are predictable because history shows it has occurred and is likely to occur again. Indeed, the reason EPA declined to allow expired RINs to be used for compliance after 2024 was because of the impacts to the program and, thereby, to biofuel producers. *See* EPA, August 2025 Decisions on Petitions for RFS Small Refinery Exemptions, at 20-22 (2025), Ex. A to Doc. #2132515.

---

[4] There is no minimum threshold for establishing an injury. *See Carpenters Indus. Council v. Zinke*, 854 F.3d 1, 5 (D.C. Cir. 2017) ("Economic harm to a business clearly constitutes an injury-in-fact. And the amount is irrelevant.") (citing *Czyzewski v. Jevic Holding Corp.*, 137 S. Ct. 973, 983 (2017) ("For standing purposes, a loss of even a small amount of money is ordinarily an 'injury.'"), and *Wallace v. ConAgra Foods, Inc.*, 747 F.3d 1025, 1029 (8th Cir. 2014) ("The consumers' alleged economic harm—even if only a few pennies each—is a concrete, non-speculative injury.")).

9

Contrary to the Alon and Parco Refiners' claims, the RNG COALITION and SABR did explain the relevant market dynamics that would result in drops in RIN prices or loss of demand because of a favorable decision for refiner petitioners in this case. Dietz Decl. ¶¶10-12; Jobe Decl. ¶¶10-11. They are also incorrect in claiming that *Sinclair* somehow requires movant-intervenors to quantify those harms or to express a "dollar figure on the potential loss." Opp'n at 11 (Doc. #2147573). It does not. *See also New Jersey*, 989 F.3d at 1048 (recognizing petitioner could rely on "predictable effect[s]" to find standing); *Carpenters Indus. Council*, 854 F.3d at 6 ("When performing that inherently imprecise task of predicting or speculating about causal effects [in standing analysis], common sense can be a useful tool."). Such a requirement is against Supreme Court precedent rejecting requiring such a showing to support standing. *See Diamond Alt. Energy, LLC v. EPA*, 145 S. Ct. 2121, 2135-2136 (2025) (finding "commonsense economic realities" are sufficient to support standing). Indeed, the Supreme Court decision in *Diamond Alt. Energy* overruled *Ohio v. EPA*, 98 F.4th 288 (D.C. Cir. 2024), which was cited by *Sinclair*. That case simply cannot support denying intervention here.

In short, it is simply nonsensical to argue that the producers that generate RINs that would be directly impacted if a determination made by EPA to avoid negative impacts on a program designed to promote renewable fuel production is overruled by this Court do not have standing to defend that determination. Indeed, this Court

10

*granted* biofuel interests leave to intervene to defend EPA's action in *Sinclair* with respect to challenges brought by refiners to EPA's denials of small refinery exemptions under the Renewable Fuel Standard program. Mot. to Intervene at 13 (Doc. #2142907). This undermines the Alon and Parco Refiners' claim that *Sinclair* imposes a higher burden on biofuel producers to support intervention that has not been met here. Instead, similar to the numerous cases finding biofuel producers can intervene and have standing with respect to challenges to EPA's implementation of the Renewable Fuel Standard, RNG COALITION and SABR provided more than enough basis to find standing to support intervention here.

**III.   Conclusion**

Although this Court has deferred the intervention motions to the merits panel, RNG COALITION and SABR respectfully request that this Court grant intervention. The petitioners have had ample opportunity to submit their opposing arguments, which have been debunked by each movant-intervenor. While given permission to submit merit briefs, petitioners and respondents continue to file motions impacting this case without seeking input of the movant-intervenors. *See, e.g.,* Doc. #2147215, #2147555. Therefore, for the foregoing reasons and for the reasons outlined in their motion for leave to intervene, the Coalition for Renewable Natural Gas and Sustainable Advanced Biofuel Refiners Coalition respectfully

request that the Court enter an order granting them leave to intervene in support of Respondent in the above-referenced consolidated cases.

Dated:  December 3, 2025                    Respectfully submitted,

/s/ Sandra P. Franco
Sandra P. Franco
Franco Environmental Law, LLC
600 Pennsylvania Avenue, SE
Unit 15577
Washington,  DC 20003
T 202 256-6115
sandra@ francoenvironmentallaw.com

*Counsel for Coalition for Renewable Natural Gas and Sustainable Advanced Biofuel Refiners Coalition*

## CERTIFICATE OF COMPLIANCE

The undersigned hereby certifies that:

1) This reply complies with the type-volume limitation of Federal Rule of Appellate Procedure 27(d)(2)(A) because it contains 2594 words, excluding the exempted portions.

2) This reply complies with the typeface and type style requirements of Federal Rules of Appellate Procedure 27(d)(1)(E) and 32(a)(5-6) because it was prepared in a proportionally spaced typeface using Microsoft Word for Microsoft 365 in 14-point Times New Roman font.

/s/ Sandra P. Franco
Sandra P. Franco

UNITED STATES COURT OF APPEALS
FOR THE DISTRICT OF COLUMBIA CIRCUIT

| | |
|---|---|
| REH COMPANY, LLC, *Petitioner,* v. UNITED STATES ENVIRONMENTAL PROTECTION AGENCY, *Respondent.* | No. 25-1180 (and Consolidated cases) |

**CERTIFICATE OF SERVICE**

I hereby certify that on the 3rd day of December, 2025, I caused the Reply in Support of the Motion of Coalition for Renewable Natural Gas and Sustainable Advanced Biofuel Refiners Coalition for Leave to Intervene to be electronically filed with the Clerk of the U.S. Court of Appeals for the D.C. Circuit by using the Court's appellate CM/ECF system and that service will be accomplished by the appellate CM/ECF system.

/s/ Sandra P. Franco
Sandra P. Franco